## W. E. KINDLEY v. SEABOARD AIR LINE RAILWAY COMPANY.

(Filed 27 October, 1909.)

**1. Carriers of Passengers—Baggage—Larceny—Liability—Insurers.**

When there is no partnership arrangements between connecting lines of railroads, and a passenger buys a through ticket from a carrier to his destination on a connecting line, checks his trunk through to his destination and voluntarily returns to the starting point without going upon the road of the connecting lines, the latter carrier is not liable as insurer of the contents of the trunk

from larceny by reason of taking the trunk to its destination, storing it there in its baggage room until its return was requested and then forwarding it to the junctional point, without compensation.

2. Same — Warehousemen — Consideration — Gratuitous Bailee — Gross Negligence—Evidence.

Nor is the connecting line liable under 'such circumstances as a warehouseman by. reason of having stored the trunk at the destination in its baggage room, but only as a gratuitous bailee, for gross negligence; and the burden being upon plaintiff to show negligence, he cannot recover the value of the stolen articles in his suit against the connecting carrier, there being no evidence that the carrier was negligent under the facts appearing.

3. Same—Interpretation of Statutes.

Carriers are made liable under the statute (Revisal, sec. 2624) for baggage of passengers "from whom they have received fare," etc.. and they are also required under the statute (Revisal, sec. 2627) to redeem the unused part of the ticket in the manner therein prescribed; and a connecting line which receives the trunk of a passenger checked through under a ticket bought from the initial carrier, with which it has no partnership agreement, and carries it to its destination, places it in its baggage room, not knowing that the passenger voluntarily did not take its train, and returns it upon request of the passenger, is merely a gratuitous bailee, having performed the service without consideration.

APPEAL from W. J. Adams, J., April Term, 1909, of CUMBERLAND.

The facts are stated in the opinion of the Court.

Sinclair & Dye and Cook & Davis for plaintiff.
J. D. Shaw and Murray Allen for defendant.

WALKER, J.   In this case the plaintiff sought to recover the value of a diamond, which she alleged had been cut from its setting in one of her rings.   The general allegation was that on 18 December, 1905, she purchased a through ticket from the city of Fayetteville to the city of Charlotte, which was issued by the defendant, the Atlantic Coast Line Railroad Company, via Maxton, to the place of her destination, in Charlotte.   The ring, we will assume, for the purpose of deciding the question presented, and as the evidence tends to show, was in her trunk at the time the latter was delivered to the drayman for the purpose of being carried to the depot of the Atlantic Coast Line Railroad Company for shipment to Charlotte.   There was some evidence tending to show that for a large part of the time the trunk was being carried from Fayetteville to Maxton it was under the supervision of the employees of the latter company, whose duty it was to take care of it, and was in good condition, and evidence was offered tending to show that at Maxton it was placed upon a truck and

left, unguarded, on the station yard of the Atlantic Coast Line Railroad Company for about two hours and until the arrival of the Seaboard Air Line train, which was behind its schedule time that night. The plaintiff left Fayetteville on the train of the Atlantic Coast Line Railroad Company at 5 o'clock P. M. and arrived at Maxton between 8 and 9 o'clock P. M. the same day. She found that the train of the Seaboard Air Line Railway, bound for Charlotte, was delayed by an accident, and therefore she could not reach Charlotte until several hours after the usual time of arrival. She then decided to return to Fayetteville by the next train, and looked for the agent of the Atlantic Coast Line Railway at Maxton for the purpose of having her trunk checked back to Fayetteville, but, failing to find him, she requested the conductor of the returning train of the Atlantic Coast Line Railroad Company to have the trunk checked to Fayetteville. He replied that he did not think she could get it, and advised her to see the agent at Fayetteville on her return and have it sent to her. She returned to Fayetteville by the next train, leaving her trunk in Maxton. The trunk remained on the truck until the arrival of the train of the Seaboard Air Line Railway Company, when it was first delivered to that company, placed in its baggage car and carried to Charlotte. The Seaboard Company had no notice that the plaintiff had returned to Fayetteville, and no knowledge that the owner of the trunk was not a passenger on its train. When the train of the Atlantic Coast Line Railway Company arrived at Fayetteville the agent of the latter company was requested by the *feme* plaintiff's husband, Mr. Kindley, to telegraph for the return of the trunk. On 24 December, 1905, the trunk was received at Fayetteville in apparently good condition, and was locked and strapped, having no external appearance of having been opened. When it was examined by the plaintiff the condition of its contents was such as to indicate that it had been opened and the diamond cut from the ring and stolen; at least, it could not be found. There was no evidence of any negligence on the part of the Seaboard Air Line Railway Company in handling the trunk, unless an inference of negligence is, in law, to be drawn from the fact that the trunk had been in its possession and under its control while in transit on one of its trains and in its baggage room at Charlotte. The latter company never received or demanded any compensation of the plaintiff for the service it rendered in carrying the trunk from Maxton to Charlotte. The court submitted to the jury certain issues, which, with the answers thereto, are as follows:

151—14

1. "Was the property of the *feme* plaintiff lost through the negligence of the defendant, Atlantic Coast Line Railroad Company, as alleged in the complaint?"    Answer: "Yes."

2. "Was the property of the *feme* plaintiff lost through the negligence of the defendant, Seaboard Air Line Railway, as alleged in the complaint?"    Answer: "Yes."

3. "What amount, if any, is the *feme* plaintiff entitled to re- cover?"    Answer: "$170."

Among others, the defendant, Seaboard Air Line Railway Company, requested the court to give the following instructions to the jury:

1. "That defendant would only be liable if the jury find from the evidence that the loss occurred while the trunk was at Charlotte, on its way to Fayetteville, resulting from gross negligence on its part, and there is no evidence of gross negligence.

2. "That defendant was only required to take such care of the trunk while in Charlotte, or on its way to Fayetteville, as a prudent man would of his own property, and there is no evidence tending to show that defendant failed to take such care."

The court refused to give those instructions, or either of them, and charged the jury that the defendant, the Seaboard Air Line Railway Company, could, in law, be held liable to the plaintiff for the value of the diamond, either as an insurer, a warehouseman or a gratuitous bailee, depending upon how the jury should find the facts to be, the court stating to the jury the general principles of law applicable to each of those relations towards the plaintiff, sustained by the said defendant, and the measure or scope of its liability.    There were other instructions given as to both of the defendants, which it is not necessary to set out.    The court, in the exercise of its discretion, set aside the verdict as to the Atlantic Coast Line Railway Company and ordered a new trial as to it.    Judgment was entered upon the verdict as to the other defendant, who has brought the case here by appeal, upon exceptions and assignments of error, duly taken during the course of the trial.

We think the very learned judge erred in his instruction to the jury.    How the defendant, who was cast in this suit, can be responsible to the plaintiff as an insurer, having received not the slightest compensation for its services to the plaintiff, which service was in every conceivable view voluntary and rendered in ignorance of the real facts, we are unable to see.    It would be, in our opinion, an unreasonable imposition upon the appealing defendant to lay down any such rule of law, and we should not do it.    The Seaboard Company never received the trunk as a common carrier.

There are three aspects of the case, the court told the jury, in which the appellant could, admitting *all* that the plaintiff charges, be held for the value of this diamond: (1) as an insurer; (2) as a warehouseman; (3) as a gratuitous bailee. We do not hesitate to say that this is a very important question, involving as it does the rights of travelers with reference to their baggage. No one will go farther than the writer of this opinion to hold these carriers to a strict responsibility, not only in the protection of the rights of the passenger as to the safe and convenient carriage of himself, but also as to the safe custody and protection of his baggage during its transit, from the time of delivery to it for carriage until it has reached its destination. It is a very questionable proposition, though, that when a trunk is delivered at Fayetteville for carriage to Charlotte, even upon a through ticket, it being admitted that there was no partnership arrangement between the Coast Line and the other company, upon which the Seaboard should be held liable, the plaintiff is entitled to recover from the Seaboard Company the value of the lost diamond, when the latter company had no knowledge whatever that it was not carrying the trunk of a passenger on its line, but was gratuitously performing a service for the plaintiff, which, in law, she had no right to request, and certainly not to demand as her legal right. But the authorities, even the decisions of this Court, are fully sufficient to acquit the defendant of any legal wrong to the plaintiff, as an insurer, upon the facts as they appear, and construing all of them "in the best light" for the plaintiff. While we have referred to the question, it is not very material to inquire whether the appellant was an insurer of the safe custody and protection of this trunk or not. There is *no* evidence in this case that it insured the trunk against invasion by a robber. All the evidence proves the contrary, if it is the very truth, and authorizes us to conclude that it is the same as the facts themselves. What principle, upon the admitted facts of this case, can possibly hold this appellant as an insurer? It received the trunk in total ignorance of the fact that the *feme* plaintiff had changed her mind and decided to return to Fayetteville. Was it the fault of the appellant that the plaintiff changed her mind? It is said that it was because the train was late in arriving at Maxton, which delay was caused by the *negligence* of the appellant, so far as appears. The evidence showed that the train of the Seaboard Company had been delayed by an accident, not due, so far as appears, to any negligence on the part of that defendant. But suppose it was negligent in this respect; it did not authorize the *feme* plaintiff to return to Fayetteville and leave her trunk at Maxton, knowing that it would

KINDLEY *v.* RAILROAD.

be carried to Charlotte, without notice to the appellant, generally speaking, if she could have given it, that it was performing a gratuitous service in taking her baggage to Charlotte. Such a holding would be contrary, we think, to the well-settled principle of the law. The law, as declared by the decisions of this and other courts, and as recognized by the text writers, acquits the appellant of any liability in this case as an insurer, unless the facts are changed by new or additional testimony.

Our rule has always been that where a carrier of baggage or of goods has become a warehouseman or a gratuitous bailee it is incumbent upon the plaintiff to offer *some* proof of negligence. When his cause of action and his right to recover is based upon negligence by the alleged offending party, he must show it, subject, however, to certain exceptions, which do not apply to this case. The learned judge bottomed the case upon the wrong ground when he held the appellant might be liable as an insurer. The appellant was certainly nothing more than a gratuitous bailee, liable for gross negligence (*crassa negligentia*). Did the fact that the trunk was deposited by it in its baggage room at Charlotte increase its liability in any degree or make it a warehouseman? If the appellant had left it on its yard, without a caretaker, the jury might perhaps have found, upon proper instructions from the court, that there had been gross negligence. This being so, can the fact that having received the trunk as a gratuitous bailee, it converted itself into a warehouseman by taking better care of it? *Non sequitur.* It is only when the baggage is received by the carrier—quo carrier—and is afterwards placed in its baggage room, remaining there for a reasonable time to be claimed by its owner, that the *carrier* becomes a warehouseman. But when it received the trunk as a gratuitous bailee, this relation of it to the owner of the baggage continues, and must needs continue, so long as the bailee has possession of it. We therefore think the learned judge erred in determining the liability of the appellant upon the idea that it became a warehouseman.

This case must go back for a new trial. But it would be trifling with the law and cause unnecessary delay in the disposition of the case if we failed to pass upon the other questions presented, which will surely come before us if there is another trial. We therefore proceed to consider them. It cannot be questioned, as we have shown, that the appellant is not liable as an insurer; but it was seriously contended by Mr. Dye, in a very able and learned argument and carefully prepared brief, that the appellant was at least liable, in any view of the facts, as a gratuitous bailee, after the trunk had reached Charlotte and had

been deposited in its baggage room, and after, also, the plaintiff had been given a reasonable opportunity of claiming and removing the same. *Trouser Co. v. Railroad,* 139 N. C., 382. But there is not a particle of evidence that, after the defendant had received the trunk at Charlotte and housed it in its wareroom, or after it had been notified to return the trunk to Fayetteville by the agent of the Atlantic Coast Line Railroad Company, it was guilty of any kind of negligence—that is, that it failed to exercise ordinary or even the slightest degree of care, so as to make it liable as a bailee for hire or as a gratuitous bailee. There was absolutely no evidence that the appellant ever assumed the liability of a common carrier with reference to this trunk, nor is there any evidence, affirmative or positive, that it neglected or omitted to perform its duty as a gratuitous bailee. The burden of proof as to the negligence, upon the facts of this case, was, by *all* our authorities, upon the plaintiff when she sought to charge the defendant as a gratuitous bailee. *Kahn v. Railroad,* 115 N. C., 638; *Hilliard v. Railroad,* 51 N. C., 343; *Chalk v. Railroad,* 85 N. C., 423. In the case first cited *Judge Shepherd* tersely but with sufficient clearness, fullness and accuracy thus states the law: "There was also error in so much of the charge as states that the burden was on the defendant to show that the property had not been lost or destroyed by reason of the defendant's negligence. It very clearly appears that the defendant's liability as a common carrier had ceased when the property was destroyed by fire, and that it was liable only as a warehouseman for want of ordinary care. 'The rules of law require, in an action for damages resulting from the negligence of the defendant, or his agents or employees while engaged in his service, that the plaintiff shall prove the negligence as a part of his case' (*Doggett v. Railroad,* 81 N. C., 461), and we see nothing in the record to show that the present case falls within any of the exceptions to this general principle." This case goes farther than is required to sustain our decision.

In 4 Elliott on Railroads, sec. 1652a, we find it stated that "If a passenger stops or lies over at an intermediate point on his journey, without the consent of the carrier, and permits his baggage to go on without him, the carrier is not liable as such, but is liable, it seems, only as a gratuitous bailee." In *Brick v. Railroad,* 145 N. C., 203, where this Court carefully considered the liability of a carrier for baggage, and delivered its opinion by the present Chief Justice, it was held that, where the owner does not accompany his baggage, but leaves it in the constructive possession of a third person, who travels on the same train with it, and even when that person was the clerk of the owner, the latter

cannot recover for any loss of the baggage or its contents, except by showing a case of gross negligence or willful misconduct. The Chief Justice said: "The court erred in holding that in no event could the plaintiff recover; but as there was no evidence of gross negligence this was harmless error." And we now say in this case and *a fortiori,* as there was no showing at all by the plaintiff of even a lack of ordinary care, the defendant was not liable as warehouseman. Indeed, the evidence all tends to show that the defendant exercised ordinary care and due diligence in regard to the protection of the trunk while in its possession. We invite a careful perusal of the case of *Brick v. Railroad, supra,* for it covers every essential question in this case and states the law in regard to the liability of the defendant in that case (under facts and circumstances not as strong in its favor as are those in this case for the defendant) with remarkable pithiness and accuracy. In Fetter on Carriers, vol. 2, sec. 625, we find it stated as an admitted principle that "A connecting carrier is not liable for a passenger's baggage beyond its own line, in the absence of any showing that the carriers concerned in the transaction are partners, either *inter se* or as to third persons." See, also, *Railroad v. Roach,* 35 Kan., 740; *Railroad v. Campbell,* 36 Ohio St., 647. The English rule, recognized by every court of Westminster Hall, was to regard the carrier who received the goods and booked them for a certain destination beyond its own line as a carrier throughout the entire route; and this rule has met with favor in the courts of this country. *Watson v. Railway,* 3 Eng. L. & Eq., 497; *Railroad v. Copeland,* 24 Ill., 337. Our statute provides (Revisal, sec. 2624) that carriers shall be liable for baggage of persons (passengers) "from whom they have received fare or charged freight"; and it is further provided by section 2627 that "When any round-trip ticket is sold by a railroad or transportation company, it shall be the duty of such company to redeem the unused portion of said ticket by allowing to the holder thereof the difference between the cost thereof and the price of a one-way ticket between the stations for which such round-trip ticket was sold. Whenever any one-way or regular ticket is sold by a railroad or transportation company, and not used by the purchaser it shall be the duty of the company selling the ticket to redeem it at the price paid for it." It appears therefore, very clearly, from the express provision of the statute, that the Seaboard Air Line Railway Company did not and could not receive any compensation for the transportation of the plaintiff or her baggage over its line, which connected with that of the other defendant. There was no partnership or association between the carriers in their traffic

arrangements. The logical and inevitable conclusion is that it was merely a gratuitous bailee, responsible for *"gross* negligence" (if, in fact, there be in legal phraseology such a term), bound to a slight degree of care, and consequently liable for gross negligence, if the diamond was abstracted from the trunk while in its possession or during the storage of the baggage in its warehouse or baggage room. When the bailor sues the bailee for a breach of the contract of bailment, it must appear, not only that there has been a loss, but that the bailee failed to perform his duty by neglecting to use ordinary care, or that degree of care which the character of the bailment and the rules of responsibility in such cases required of him. We have examined most carefully the cases cited by the appellee's counsel, and find that they all differ in their facts from this case. It appeared in the leading authorities cited that the carrier received the baggage in his own wrong or knew at the time it had been "routed" by a different line. The cases, therefore, are easily distinguished.

While we cannot say too much in praise of the careful manner in which the trial of the case was conducted under the supervision of the just and able jurist who presided and who displayed great ability and learning in his charge, and while generally it is correct in the statement of legal principles, we must conclude that, in the respect indicated, he did not declare the law as the appellant was entitled to have it stated to the jury. There was error in the charge of the court as to the liability of appellant, upon the facts as they appeared in the case, and it must be submitted, with proper instructions, to another jury.

New trial.