This is a civil action to recover the sum of $500.00 under an insurance policy for damages to an automobile resulting from collision or upset. The defendant denied that the plaintiff was the unconditional and sole lawful owner of the automobile at the time the policy was issued and at the time of the loss or damage thereto. From the judgment upon the verdict in favor of plaintiff defendant appealed to the Supreme Court, and assigned errors. *Page 170 
The issues submitted to the jury and their answers thereto were as follows:
"1. Was the plaintiff, Mrs. Lillie Martin, the owner of that certain automobile described in the complaint on the 5th day of October, 1938, and the 11th day of October, 1938? Answer: `Yes.'
"2. What amount, if any, is the plaintiff, Mrs. Lillie Martin, entitled to recover from the defendant? Answer: `$500.00.'"
The court below rendered judgment on the verdict. The defendant made numerous exceptions and assignments of error and appealed to the Supreme Court. The material ones and necessary facts will be set forth in the opinion.
At the close of plaintiff's evidence and at the conclusion of all the evidence, defendant made motions for judgment as in case of nonsuit. C. S., 567. Upon the latter motion the court below sustained the motion as to Yadkin Valley Motor Co., Inc., and overruled the motion as to Mrs. Lillie Martin. The exceptions and assignments of error made by defendant as to the court below overruling the motion for judgment as of nonsuit, as to Mrs. Lillie Martin, cannot be sustained. It does not appear in the record that plaintiff, the Yadkin Valley Motor Co., Inc., had a lien on the automobile in controversy. The question of parol evidence to establish a lien is hereafter considered.
Admissions by defendant: "The defendant admits: (1) That the policy sued upon was executed and delivered by the defendant. (2) That the premium on the policy sued upon was fully paid at the time the policy was issued and delivered. (3) That the automobile described in the policy and referred to in the complaint was damaged by collision or upset on or about 11 October, 1938. (4) That the Yadkin Valley Motor Co., Inc., is a corporation organized, existing and doing business under the laws of the State of North Carolina."
The plaintiffs introduced in evidence insurance policy #3165487, dated 5 October, 1938, issued by the Home Insurance Company of New York covering one used Ford DeLuxe Coupe, Motor #4256460, 1938 model; said exhibit or policy being marked "Plaintiff's Exhibit A."
The plaintiff introduced in evidence summons in the action, dated 2 January, 1939, served 9 January, 1939. The following is in the record: "Q. Mrs. Martin, how much do you owe the Yadkin Valley Motor Co., Inc., on that automobile? Ans.: $408.96. Court: She can testify to what she owes them. Q. Did you owe the same amount on October 11, 1938? Ans.: Yes, sir." *Page 171 
The exhibit indicates that it is a note signed by Mrs. Lillie Martin to Yadkin Valley Motor Co., Inc., for $408.96, dated 5 October, 1938, "Undersigned jointly and severally promise to pay to the order of Yadkin Valley Motor Co., Inc., at the office of Commercial Credit Company, Charlotte, North Carolina, 12 monthly installments of Thirty-four and 08/100 Dollars — $34.08 each." This note was transferred by the Yadkin Valley Motor Co., Inc., to the Commercial Credit Company. The plaintiff, Yadkin Valley Motor Company, Inc., having no lien on the automobile in question, nonsuit as to it was properly granted. There is no language in the note by which it could be construed as a lien or mortgage. The exceptions and assignments of error made by defendant on this aspect are immaterial, as the Yadkin Valley Motor Co., Inc., is eliminated from the controversy. An attempt to establish a lost lien and defendant's motion to nonsuit, which was allowed, made this aspect immaterial, therefore defendant's exceptions and assignments of error cannot be sustained.
Mrs. Lillie Martin testified, in part: "My name is Mrs. Lillie Martin. I am one of the plaintiffs in this action. . . .On October 5, 1938, I owned a 1938 model Ford coupe. The paper which you hand me is the title to the car that I owned. (Plaintiffs offer in evidence certificate of title marked D. The defendant admits that the certificate of title was issued by the Department of Revenue of the State of North Carolina, but objects to the introduction of the certificate of title upon the ground that it was issued on December 5th, 1938, which was exactly two months after the date of the alleged purchase by the plaintiff and almost two months after the date of the collision.) This is my insurance policy; I got it through the mail. I owned the automobile described in the insurance policy on October 11, 1938. On that date it was wrecked. The reasonable market value of the automobile just prior to the time it was wrecked was $600.00, in my opinion. The reasonable market value of the automobile just after it was wrecked, in my opinion, was $50.00."
The defendant contends that the questions involved are:
(1) Did the court err in admitting as evidence of ownership of the automobile the certificate of title issued approximately two months after the time of the purchase of and collision or upset to the automobile in question? We think not.
In the record, on cross-examination of Kenneth Brooks, by defendant (bookkeeper for the Yadkin Valley Motor Co., Inc., on 5 October, 1938), he testified: "She signed the title that day. Q. She did sign the title? Ans.: Yes, sir. Q. And you sent off the application for the title that day? Ans.: I don't remember the day the title was sent off. Q. Do you know why you didn't get the certificate of title on that car until *Page 172 
Dec. 5th? Ans.: No, sir. Q. Did you keep the application until after the wreck happened? Ans.: I don't remember the day the title was mailed off to the Department of Raleigh. Q. You attended to that yourself, she didn't have anything to do with it? Ans.: No, sir; she did not. Q. Well, this is the certificate of title that you are talking about, Plaintiff's Exhibit D, isn't it? Ans.: Yes, sir. Q. And it is dated December 5, 1938? Ans.: The day it is issued and the title is dated October 5, 1938."
On the certificate of title is the following: "And that the applicant has stated under oath that said applicant is the owner of said motor vehicle and that it is subject to the following liens and none other: 2nd Lien — Amount — Kind — Date — Favor of. 1st Lien Amount $408.97 — Kind C. S.C. — Date 10-5-38 — Favor of Yadkin Valley Motor Co., Inc., North Wilkesboro, N.C."
We think this was some evidence, the probative force was for the jury to determine, to sustain plaintiff's contention that she was the owner of the car in question.
The evidence indicates that she made application on 5 October, 1938, but the Revenue Department did not issue the certificate until 5 December, 1938. This action was brought 2 January, 1939.
(2) Did the court err in permitting the plaintiff and her witnesses to prove by parol testimony the existence and contends of the allegedly lost condition sale contract to Yadkin Valley Motor Co., Inc., which company was not a named insured in the policy sued upon, and which company was nonsuited at the conclusion of all the evidence? We think not.
The question of parol evidence as to an alleged conditional sale contract, we think, has been eliminated from this controversy. The court below, on motion of defendant, sustained the motion to nonsuit the Yadkin Valley Motor Co., Inc. This, on defendant's motion, made this evidence immaterial.
In the record is the following: "Court: What I want to get in the record here is that you are stating if the jury should find from the evidence in this case and by the greater weight that Mrs. Martin was the owner of that automobile in question on the 5th day of October, 1938, and on the 11th day of October, 1938, the sole owner with the exception of the outstanding lien to the Commercial Credit Company or the Yadkin Valley Motor Co., Inc., that you are not contesting the payment of the policy, if the jury should find she is the owner of it on those dates. Attorney for defendant: No, sir, we are perfectly willing to pay our policyholders whatever we owe them, but we don't want anybody else coming in. Attorney for plaintiff: As I understand it — he will pay the full amount of the policy and then the adjustment of the lien will be between Mrs. Martin and the Yadkin Valley Motor Co., *Page 173 
Inc. Court: No, sir, he said he would pay whatever the jury said. Attorney for defendant: I mean we will pay whatever we are liable for under the policy. Let's get this stipulation in the record. The defendant, Home Insurance Company, takes the position that under the policy introduced in the case of the Yadkin Valley Motor Co., Inc., is not a named assured, and is not a party to the contract, that the named assureds are Commercial Credit Company and Mrs. Lillie Martin, and the liability, if any, of the defendant is to its named assureds only and that the Commercial Credit Company is asserting no claim under the policy. Court: You are also taking the position if there are any liens outstanding on this car that that is a matter between the lien-holders and Mrs. Lillie Martin? Attorney for defendant: That is right, sir. Court: And that you are not interested in what their adjustment shall be of any loss of any as due under the policy? Attorney for defendant: We don't even get in that. We are not asking that the Commercial Credit Company or anybody else claim any liens or any part of it."
(3) Did the court err in refusing to allow the defendant to cross-examine the plaintiff and her witnesses with reference to the ownership of an previous wrecks involving the automobile in question, and with reference to previous cancellations of insurance thereon by other companies? We think not.
(4) Did the court err in permitting a cross-examination of a witness for the defendant, which cross-examination tended to charge the witness with an attempt to defraud the plaintiff, and in refusing to allow the witness to explain on re-direct examination? We think not.
No issue was tendered by defendant to raise the questions complained of. The only one not objected to was as to whether the plaintiff was the owner of the automobile.
"A party has the right to an opportunity to fairly and fully cross-examine a witness who has testified for the adverse party. This right, with respect to the subject of his examination-in-chief, is absolute and not merely a privilege. A denial of it is `prejudicial and fatal error.'" Bank v. Motor Co., 216 N.C. 432 (434), and cases cited.
The defendant cites the above cases, wherein the law is well settled, but the cross-examination must be germane to the controversy. In this case it was not.
Defendant contends that testimony as to the number of children Mrs. Martin had was prejudicial. We cannot so hold. There was other evidence in the record, unobjected to, that she had children.
(5) Did the court err in charging the jury that the defendant "admits that the policy was in full force and effect on the 11th day of October, 1938, the day of the alleged collision or upset of the car," when the defendant had not at any time admitted, and did not admit, that the *Page 174 
policy was in full force and effect on the 11th day of October, 1938, the day of the alleged collision or upset of the car, but, on the contrary, had denied that the policy was or had been in full force and effect? We cannot so hold.
The full charge on this aspect is as follows: "Now, gentlemen of the jury, the court charges you that the defendant admits the issuance of the policy in question, admits that it was issued on this car; admits that it was issued to Mrs. Lillie Martin as one of the beneficiaries or one of those entitled to recover under the policy; admits that the policy covers the actual cash value of the car less fifty dollars; admits that the policy was in full force and effect on the 11th day of October, 1938, the day of the alleged collision or upset of the car; admits that the premiums on said policy had been paid to the company and they had received the same, and that the policy was in full force and effect on the date of the alleged collision, to-wit, on the 11th day of October, 1938. Now, gentlemen of the jury, those admissions having been made in the pleadings and in the evidence in the case and admissions of counsel, there arises then the question of whether or not this automobile on the 5th day of October, 1938, and the 11th day of October, 1938, the first date mentioned the date that the policy was issued and the second date mentioned the date of the alleged collision or upset of the car,whether or not she was the owner on thosedates or not. If she was, gentlemen of the jury, then she is entitled to have you answer these issues in her favor as to the ownership of the car and also as to the damages that were sustained by reason of the collision or upset. If she was not the owner on those dates, then, gentlemen of the jury, she is not entitled to have you answer these issues in her favor because the court charges you if she was not the owner of this automobile on the date the policy was issued and was not the owner of the automobile on the date that the collision or upset occurred, if one did occur, then the court charges you, gentlemen of the jury, that she had no insurable interest and that she was not the true owner of the car and would not be entitled to receive any of the benefits of this policy because she must have been under the terms of the policy the true owner of this automobile before she could be entitled to receive the benefits of this policy, but if she was the true owner of these dates, then she is entitled to receive the benefits of this policy, it having been admitted that the policy was issued and premiums paid and the policy was in full force and effect on those dates."
Taking the entire charge, we see no error. It is well settled that a charge must be considered contextually, and not disjointedly. Speas v.Bank, 188 N.C. 524; Milling Co. v. Highway Com., 190 N.C. 692; Marrinerv. Mizzelle, 207 N.C. 34.
It is held in Braddy v. Pfaff, 210 N.C. 248 (headnote): "Where it appears that the charge, when read contextually as a whole, was not *Page 175 
prejudicial in its manner of stating the evidence and contentions of the parties, an exception, based upon detached portions thereof, will not be sustained."
(6) Did the court err in failing to explain to the jury the law with reference to "ownership"; "unconditional and sole lawful ownership"; "misrepresentation and fraud"; "warranties"; or "corroborative evidence"? We think not.
In the event the defendant desired fuller definitions or more specific instructions as to these phrases and words it was the defendant's duty and privilege to tender to the court a prayer for instructions. The defendant failed to do this and he cannot now take advantage of his failure. S. v.Puckett, 211 N.C. 66;Arnold v. Trust Co., 218 N.C. 433.
There was no exception on the part of the defendant as to the issues and no issue was tendered as to the validity of the policy. The charge when read as a whole is pertinent to the issues and explains the law as arises on the issues. The Court will not permit the defendant to extract isolated portions of the charge and hold the same for error when the charge in its entirety correctly explains the law arising from the issues and gives to the defendant a fair trial. A charge is to be taken as a whole and not broken up into disconnected and desultory fragments and thus considered.Gilliland v. Board of Education, 141 N.C. 482; Milling Co. v.Highway Com., supra; Gore v. Wilmington, 194 N.C. 450; Harrison v. Ins.Co., 207 N.C. 488; S. v. Brackett, 218 N.C. 369.
Then, again, the only question was that of ownership, and that was the only issue not objected to. The other aspects were not germane or material to the controversy. The most important phase of the controversy as to ownership of the automobile was the contradictory statements made by Mrs. Martin to Mr. Franklin, witness for defendant. This aspect was thoroughly gone into and the jury accepted Mrs. Martin's version. From an examination of the whole record, and hearing the persuasive though not convincing argument of defendant, leads us to the conclusion that none of the exceptions and assignments of error made by defendant can be sustained.
The court below, in the charge of some 20 pages, gave the contentions of the parties accurately and carefully and charges the law applicable to the facts. On the whole record, we can find no prejudicial or reversible error.
The defendant says it wants to pay the policy, but wants to be protected and pay it to the proper party. The jury has settled that question and it will be protected from further liability.
No error. *Page 176