RAYMOND CLOTT v. GREYHOUND LINES, INC.

No. 18

(Filed 14 April 1971)

1. Carriers § 16— bus company's liability for baggage

A bus company was not an insurer of a bag that was carried aboard its bus in the passenger's custody and control and whose existence the company was unaware until it was notified that the passenger had lost the bag.

2. Carriers § 16; Bailment § 3— liability for baggage — gratuitous bailment — creation of involuntary trust

A bailment solely for the benefit of the bailee—a gratuitous bailment—may be effected with respect to baggage which comes into the hands of a carrier as an involuntary trust through accident or mistake.

3. Carriers § 16— carrier's liability for baggage

Ordinarily, a passenger leaving personal baggage in a carrier upon alighting therefrom cannot hold the carrier responsible for the loss of the baggage; but the carrier may be held liable where a subsequent loss proximately resulted from the failure of the carrier's employees to take care of the baggage after full knowledge of the facts.

4. Carriers § 16; Bailment § 3— bus passenger's loss of bag and contents — negligence of bus company — sufficiency of evidence

A bus company could be held liable, as a gratuitous bailee, for the loss of a bag and its contents that was carried aboard the company's bus in the custody of a passenger and that remained on the bus after the passenger was left behind during a stopover, where the passenger's evidence tended to show that (1) the bag recovered from the bus at the next stopover was the passenger's bag, (2) the company's terminal manager received the bag with its locks unbroken, (3) the bag thereafter remained in the control and possession of the company, and (4) the bag was subsequently returned to the passenger with its locks broken and its contents rifled.

5. Carriers § 16— liability for baggage — damages — federal law

Federal statutes are applicable to the amount of damages a plaintiff may recover for the loss of a bag in interstate commerce.

ON *certiorari* to North Carolina Court of Appeals to Review its decision (9 N.C. App. 604, 177 S.E. 2d 438) affirming judgment of *Ransdell, District Judge,* entered 31 March 1970 Session of WAKE County District Court.

Civil action to recover damages for the loss or theft of a leather bag and its contents while it was allegedly in custody of defendant.

Plaintiff offered evidence which consisted of his own testimony and the adverse examinations of three of defendant's employees. A. H. Howell, by his adverse examination, testified that in December 1966 he was employed as a driver for Greyhound Bus Lines, and during the month of December he made a regular trip from Columbia, South Carolina, which was scheduled to arrive in Raleigh, North Carolina, at 11:30 a.m. on 2 December 1966. He testified:

" . . . When I arrived in Raleigh I was notified that there was a fellow left in Columbia, and I was given the information of baggage that was left on the bus by him, and asked if I would go and take it and bring it to the dispatcher's office. I don't remember what type of baggage it was. The bag was in the back of the bus on the rack. I don't remember whether I also removed a hat. The transportation supervisor instructed me to remove the bag. That was the dispatcher on duty, Mr. Rackley . . . . it was a small — well, one of these small bags and he told me it was at the back of the bus on the rack. I went out there while they were servicing the bus and got it off and brought it to him. I gave the bag directly to Mr. Rackley. I did not notice anything unusual about the bag when I took it off of the bus . . . . Now if I remember correctly, it was on the right rear.

" . . . I handed Mr. Rackley the bag in the dispatcher's office.

. . .

" . . . I talked to Mr. Lucas (the Greyhound dispatcher) in Columbia later on about the bag. He asked me about leaving the passenger. I told him I didn't know I had left him until I was notified in Raleigh. He asked me if we got it off the bus for him, and I told him that we did. . . .

. . . .

"Mr. Rackley did not make any comments to me when I delivered the bag to him. He just thanked me. He made no comment to me about the condition of the bag."

Mr. Roy Wells also by his adverse examination testified that he was Superintendent of the Raleigh Division of Grey-

hound and had been employed in that capacity since June of 1965. He had discussed plaintiff's lost bag and contents with Mr. Rackley, who was working for Greyhound in its Raleigh office on 2 December 1966 as a dispatcher. Mr. Rackley told him that he received a message from Columbia, South Carolina, concerning a lost bag which contained valuable contents, and that in response to the message he contacted the driver of the bus as soon as the bus arrived from Columbia, described the bag to the driver, and asked the driver to deliver the bag to him. The driver, Mr. Howell, did deliver the bag to Rackley, who placed it in the dispatcher's office. Rackley stated that when Mr. Clott (plaintiff) arrived that he, Mr. Rackley, was unable to locate the bag. Mr. Rackley did not have the same bag that Mr. Howell delivered to him. Mr. Wells further stated that he read correspondence which indicated that the bag was found in the Raleigh Bus Station and shipped to their unclaimed articles warehouse in Chamblee, Georgia.

Mr. Walter J. Rackley, Jr., by his deposition stated that during the month of December 1966 he was employed by defendant as a driver and part-time dispatcher. He remembered receiving a message concerning a bag on the bus coming from Columbia, but he did not remember on what date he received such message. The message was received by teletype, but he did not remember having seen the original or the copy of the message since the date it was received. He stated that "if I remember correctly," he went to the bus with the driver and found a hat but no bag. He further stated:

"I don't remember taking a bag off the bus.

"To the best of my recollection the bus driver did not take a bag off the bus and deliver it to me at the dispatcher's office, not in this particular case. I can't remember him bringing one to me."

Plaintiff, a merchant seaman, testified that he bought a ticket in Bushnell, Florida, to go to New York City, by Greyhound bus. He was unable to check his bag when he changed buses in Jacksonville, Florida, because he had only five minutes between buses, and all baggage had to be checked twenty minutes before departure time. He testified that his bag contained

$2,209 in cash, a camera, two watches, perfume, certain sea-man's papers, and other personal effects. He described his bag as "a brown bag, valise type, satchel type bag. I had locks on the bag. I had a padlock on it, on the two handles, and also a key lock on the small latch . . . . " When he got on the bus in Jacksonville he got in the last seat and put the bag between the seat and the motor wall. He did not think anyone saw him deposit the bag. When the bus arrived in Columbia, South Carolina, at about 6:30 a.m., he heard the announcement about a stopover, but paid no attention to it because he was half asleep. It was later announced over the bus loud speaker that the bus would be delayed about twenty minutes because of a dead bat-tery. He then went into the coffee shop to get coffee and dough-nuts, and while he was walking out with the doughnuts he saw the bus pulling out. He heard no announcement of the departure after he left the bus. The dispatcher told him that he knew the bus was one passenger short. He asked the dis-patcher to get a police car or a taxi so that he might stop the bus, and then told the dispatcher about his bag containing val-uables and money and about its location on the bus. The dispatcher told plaintiff that he would wire Raleigh. Plaintiff further testified that about two hours later he took the next scheduled bus to Raleigh, and upon arrival he talked to Mr. Rackley, the Raleigh dispatcher. "I asked for my bag, and I told him and asked him where my bag was, and he said to me, 'Here's a hat here.' He said, 'But the bag,' he said, 'My God, I gave it away.' He said, 'I must have made a mistake.' "

He received his bag from defendant company about six months later. When it was returned, "the lock was gone off and the small lock there was jimmied, which it still is, and the entire lining was torn out of the bag, . . . " Everything was gone except some papers, including his empty pay envelope.

Among other exhibits, plaintiff introduced into evidence the original of a letter which read as follows:

---

Clott v. Greyhound Lines

---

"GREYHOUND

SOUTHERN GREYHOUND LINES
DIVISION OF THE GREYHOUND CORPORATION
1220 Blanding Street, Columbia, South Carolina

January 6, 1967

Mr. Raymond Clott
Route 1, Box 204-A
Noble Avenue
Bushnell, Florida

Dear Mr. Clott:

We did indeed talk with Mr. Lucas on December 14, 1966 as we told you we would do. Mr. Lucas did not give us a written statement concerning the facts in this matter, however, he did make a report of same to our Terminal Manager, Mr. W. E. Stilwell.

Mr. Lucas has confirmed that you were left in Columbia, S. C., on December 2, 1966 as you stated. Also, that you reported to him that your hand bag and hat were left on the bus. He teletyped Raleigh, N. C. to have your property removed from the bus and that you would pick them up when you arrived in Raleigh later that day. Mr. Lucas has checked with the Driver who pulled this schedule and was told by Driver Howell that he did remove the hand bag and the hat as requested and turned them over to the Transportation Supervisor in Raleigh, N. C. That is all that he knows in this matter.

We regret to advise that our efforts to locate your hand bag from the information we got from you for tracing purposes, through our premises. We are today taking the liberty of forwarding our entire file in this matter to our Claims Department for further handling.

Yours very truly,

SOUTHERN GREYHOUND LINES
s/ A. W. McSwain
A. W. McSwain

cc: Mr. J. E. Smith"

At the conclusion of plaintiff's evidence defendant moved for a directed verdict. The court allowed the motion. Plaintiff appealed to the North Carolina Court of Appeals and that court affirmed the judgment of the District Court. We allowed plaintiff's petition for writ of *certiorari* to North Carolina Court of Appeals to review its decision on 5 January, 1971.

*Boyce, Mitchell, Burns & Smith for plaintiff.*

*Teague, Johnson, Patterson, Dilthey & Clay and Paul L. Cranfill for defendant.*

BRANCH, Justice.

Plaintiff contends that the trial judge erred when he granted defendant's motion for a directed verdict.

[1] Plaintiff, *inter alia,* contends that defendant became an insurer of his baggage because plaintiff was separated from his baggage by the negligence of defendant's agents.

If defendant were an insurer, plaintiff would be entitled to recover, *without proof of negligence,* upon proof of delivery to defendant and of failure of defendant to deliver, unless defendant could carry the burden of showing that the loss was caused by an act of God, the public enemy, the negligence of the shipper, or by the inherent qualities of the goods. *Merchant v. Lassiter,* 224 N.C. 343, 30 S.E. 2d 217; *Perry v. R. R.,* 171 N.C. 158, 88 S.E. 156. For defendant to be liable as an insurer there must have been a delivery and acceptance of the baggage into the exclusive custody and control of defendant as a carrier for its transportation. *National Fire Ins. Co. v. Yellow Cab Co.,* 205 Ark. 953, 171 S.W. 2d 927; *Blair v. Pennsylvania Greyhound Lines,* 275 Mich. 636, 267 N.W. 2d 578; *Southeastern Greyhound Lines v. Berrie,* 31 Ala. App. 178, 13 So. 2d 696.

Here, plaintiff purchased a ticket but kept complete control and custody of his baggage, and defendant had no custody or control or even knowledge concerning the baggage until plaintiff notified defendant's agent in Columbia, South Carolina, of his loss. We therefore do not think that defendant was liable as an insurer.

We observe, parenthetically, that aside from any breach of contract or strict bailment, if plaintiff had been left in Columbia,

S. C. because of the negligence of defendant, he could proceed under the general law of torts to recover any damages proximately resulting from the negligent act. Schouler, *Law of Bailments,* 2d Ed., Carrier of Passengers, § 684, p. 748; *Heath v. Kirkman,* 240 N.C. 303, 82 S.E. 2d 104.

We must, however, consider the possibility of liability upon a showing of negligence where other relationships of bailor and bailee exist.

[2] This Court has classified bailments as those (1) for the sole benefit of bailor, or in which relationship the bailee will be liable only for gross negligence, (2) for the bailee's sole benefit, in which relationship the bailee will be liable for slight negligence, and (3) those for the mutual benefit of both parties, in which relationship the bailee will be liable for ordinary negligence. However, "the terms 'slight negligence,' 'gross negligence,' and 'ordinary negligence' are convenient terms to indicate the degree of care required; but, in the last analysis, the care required by the law is that of the man of ordinary prudence. This is the safest and best rule, and rids us of the technical and useless distinctions in regard to the subject. Ordinary care, being that kind of care which should be used in the particular circumstances, is the correct standard in all cases. It may be high or low in degree, according to circumstances, but is, at least, that which is adapted to the situation." *Hanes v. Shapiro,* 168 N.C. 24, 84 S.E. 33. A bailment solely for the benefit of the bailee—a gratuitous bailment—may be effected with respect to baggage when the property comes into the hands of a carrier as an involuntary trust through accident or mistake. 14 Am. Jur. 2d, Carriers, § 1240, p. 636. When a passenger stops or lies over at an intermediate point on his journey, without consent of the carrier, and permits his baggage to go on without him, the carrier is liable as a gratuitous bailee. 4 Elliott on Railroads, 2d. Ed. § 1652A, and *Kindley v. Railroad,* 151 N.C. 207, 65 S.E. 897.

In the case of *Perry v. R. R., supra,* the plaintiff offered evidence which tended to show that on 3 December 1913 he bought a ticket on Southern Railway from Goldsboro to Raleigh and checked his baggage containing wearing apparel of the value of $50.00. The bag remained in the baggage room at Union Station in Raleigh from 7:00 p.m. on 3 December until the morning of 4 December. On the night of 3 December plain-

tiff bought a ticket from Raleigh to Henderson via defendant Seaboard Air Line Railroad and went to Henderson on Seaboard, without checking his bag. On the morning of 4 December he requested defendant's agent to have his bag brought to Henderson from Raleigh. Defendant's agent complied with plaintiff's request, and when the bag was received, plaintiff's clothes were missing. Defendant's evidence tended to show that there were no clothes in the bag when it was delivered to them and that they were not negligent in any respect. The Court, holding that the defendant was a gratuitous bailee, *inter alia,* stated:

"  . . . [T]he baggage which must be carried by the railroad company, without compensation beyond the passenger's fare, is such as is required for the necessity, convenience, or pleasure of the passenger, and consequently must accompany his person.

.  .  .  .

"The weight of modern authority is in favor of the position that proof of delivery to the carrier and of its failure to deliver is evidence of negligence sufficient to carry the case to the jury and to support a verdict, but that the jury ought to be instructed that the carrier is not liable if upon the whole evidence they do not find that it did not exercise the care of a person of ordinary prudence under the circumstances."

This Court considered bailments as related to motor carriers in the case of *Neece v. Richmond Greyhound Lines,* 246 N.C. 547, 99 S.E. 2d 756. There, defendant carrier refused to allow the plaintiff, who was traveling in interstate commerce from New York to Greensboro, to carry on the bus a bag containing wearing apparel which exceeded the dimensions given in the tariff which defendant had filed with the ICC pursuant to 49 USCA §§ 20 (11) and 319. However, plaintiff was allowed to check the parcel and was given a baggage check which recited a limitation of liability on the part of the carrier in the amount of $25. Defendant failed to deliver the baggage on demand and plaintiff brought suit to recover $619, the asserted full value of the lost baggage. The court held that the liability of the common carrier, if any, was for the full value of the luggage as a gratuitous bailee, and that the limitation of liability did not apply because the luggage did not come within the specifications

of baggage as contained in the filed tariff. In so holding, the Court stated:

"Before a motor carrier can limit its liability for negligent loss or damage to property entrusted to it, it must show: (1) it received the property as a common carrier; (2) it issued a written receipt which contained the asserted limitation; (3) the Interstate Commerce Commission has expressly authorized the limitation which is based on a rate differential.

"If each of these conditions is not shown to exist, the asserted limitation has no effect. *New York, N.H. & H.R. Co. v. Nothnagle, supra* (346 U.S. 128, 97 L. Ed. 1500) ; *Caten v. Salt Lake City Movers & Storage Co.*, 149 F. 2d 428; *Union Pacific R. Co. v. Burke, supra* (255 U.S. 317, 65 L. Ed. 657) ; *Southeastern Exp. Co. v. Pastime A. Co.*, 299 U.S. 28, 81 L. Ed. 20, 57 S.Ct. 73; *Sambur v. Hudson Transit Lines, Inc.*, 112 N.Y.S. 2d 514, 116 N.Y.S. 2d 500.
. . . .

"Plaintiff, under the provisions of her ticket, had a right to carry on the bus with her under her control her baggage. *Santa Fe Trail Transp. Co. v. Newlon*, 159 P. (2d) 713 (Okla.). When so carried, baggage is in the custody of the passenger and no responsibility with respect thereto is imposed on the carrier.
. . . .

"Where a carrier of passengers receives and handles a package for a passenger which does not qualify as baggage which the passenger is entitled to have transported free, the carrier is a gratuitous bailee of the package. As a gratuitous bailee, it is liable only if the loss be occasioned by its gross negligence. *Perry v. R. R.*, 171 N.C. 158, 88 S.E. 156; *Kindley v. R. R.*, 151 N.C. 207, 65 S.E. 897; *Brick v. A.C.L.*, 145 N.C. 203; *Trouser Co. v. R. R.*, 139 N.C. 382; 6 Am. Jur. 358.

" . . . Defendant admits receipt of plaintiff's bag and its failure to return it on demand. This admission is sufficient to take the case to the jury or to require a finding by the court if a jury trial be waived."

Clott v. Greyhound Lines

[3] Ordinarily, a passenger leaving personal baggage in a carrier upon alighting therefrom cannot hold the carrier responsible, but where it is shown that a subsequent loss was the proximate result of conduct of carrier's employees in failing to exercise ordinary care, either through failure to take care of the baggage after full knowledge of the facts, the carrier may be held liable. 14 Am. Jur. 2d, Carriers, § 1284; *Kinsley v. Lake Shore & M. S. R. R.*, 125 Mass. 54; *Fire Ins. Co. v. Yellow Cab Co.*, *supra; Clark v. Checker Taxi Co.*, 330 Mass. 20, 110 N.E. 2d 849; *Blair v. Pennsylvania Greyhound Lines, supra.*

The baggage which must be carried by a carrier without compensation beyond the passenger's fare is such as is required for the necessity, convenience or pleasure of the passenger on his journey. Ordinarily only the amount of money necessary for the payment of expenses of the journey is considered baggage. 14 Am. Jur. 2d, Carriers, §§ 1469, 1276. However, a carrier may be liable for gross negligence as a gratuitous bailee, even when the property does not properly constitute baggage. *Brick v. R. R.*, 145 N.C. 203, 58 S.E. 1073; 14 Am. Jur. 2d., Carriers, § 1269; *Michigan C.R.R. Co. v. Carrow*, 73 Ill. 348.

[4] Defendant strongly argues that plaintiff's evidence was not sufficient to show that the baggage removed from the bus by defendant's driver belonged to plaintiff, and that plaintiff's property had not been taken from the bag before it was delivered to defendant. The bus driver was "given information of baggage that was left on the bus" belonging to plaintiff. Pursuant to this information he delivered a small bag to the dispatcher. *He noticed nothing unusual about the bag, and the dispatcher received the bag without comment.* There is no evidence that any other passenger on the bus ever reported a missing bag. The dispatcher in Raleigh received the bag with information that it contained money and valuable contents. When plaintiff arrived about two hours later, the dispatcher was unable to deliver the bag which the driver had delivered to him.

Mr. A. W. McSwain wrote to plaintiff on defendant's letterhead and, in part, stated:

"Mr. Lucas has confirmed that you were left in Columbia, South Carolina on December 2, 1966 as you stated. Also, that you reported to him that your hand bag and hat were left on the bus. He teletyped Raleigh, N. C. to

have *your* property removed from the bus and that you would pick them up when you arrived in Raleigh later that day. Mr. Lucas has checked with the driver who pulled this schedule and was told by Driver Howell that *he did remove the hand bag and the hat as requested and turned them over to the Transportation Supervisor in Raleigh, N. C.*" (Emphasis added.)

One of defendant's theories is that the bag was opened and rifled before it came into the possession of defendant's agents. It is inconceivable that anyone would receive or wrongfully remove the bag from the custody of defendant's agents if the locks had been broken and the bag rifled *before* it came into the possession of defendant's agents.

We think this evidence is sufficient to support a finding that the baggage removed from the bus by defendant's driver was plaintiff's baggage, and was received by defendant's agents before the locks were broken and the bag rifled.

When the above rules of law are applied to plaintiff's evidence, we think defendant is a bailee for the sole benefit of the bailor, *i.e.*, a gratuitous bailee. However, we conclude that classification of bailments is of little import since the degree of care required in all classes of bailments is, in truth, the care of the man of ordinary prudence as adapted to the particular circumstances. The care must be "commensurate care" having regard to the value of the property bailed and the particular circumstances of the case. *Hanes v. Shapiro, supra; Insurance Co. v. Storage Co.,* 267 N.C. 679, 149 S.E. 2d 27. The standard of care is a part of the law of the case which the court must apply and explain. The degree of care required by the circumstances of the particular case to measure up to the standard is for the jury to decide. *Jackson v. Stancil* and *Smith v. Stancil,* 253 N.C. 291, 116 S.E. 2d 817.

Thus, when a bailor, whether classified as gratuitous or otherwise, offers evidence tending to show (1) that the property was delivered to the bailee, (2) that bailee accepted it and therefore had possession and control of the property, and (3) that bailee failed to return the property, or returned it in a damaged condition, a *prima facie* case of actionable negligence is made out and the case must be submitted to the jury. *Perry v. R. R., supra; Hanes v. Shapiro, supra; Pennington v. Styron,*

270 N.C. 80, 153 S.E. 2d 776. When a *prima facie* case is made out, it warrants but does not compel a verdict for plaintiff. The jury is simply authorized to find either way, and either party may lose if he offers no further proof. *Manufacturing Co. v. R. R.,* 222 N.C. 330, 23 S.E. 2d 32; Stansbury, North Carolina Evidence, 2d. Ed., § 203.

Again applying the legal principles set forth and the well recognized rules as to consideration of evidence upon motion for a directed verdict to the facts of the instant case *(Bowen v. Gardner,* 275 N.C. 363, 168 S.E. 2d 47), we conclude that plaintiff offered evidence from which a jury could find (1) that there was a delivery of the baggage to defendant, through its agents, (2) that through its agents defendant accepted and thereafter had control and possession of the baggage, and (3) that defendant failed to return a portion of the baggage and returned a portion of the baggage in a damaged condition.

We therefore hold that plaintiff's evidence was sufficient to repel defendant's motion for a directed verdict.

We do not think that plaintiff's evidence established the defense of contributory negligence as the sole reasonable conclusion. *Price v. Miller,* 271 N.C. 690, 157 S.E. 2d 347. There is no evidence of any negligence of any kind on the part of plaintiff *after* defendant assumed possession and control of the bag as bailee. Thus the action of plaintiff could not have contributed to the ultimate loss.

[5] The questions of limitation of liability by the carrier and damages are not before us, since the trial court allowed defendant's motion to dismiss. Further, the loss alleged to have been sustained by plaintiff occurred while his property was being moved in interstate commerce, and therefore appropriate federal statutes are applicable. *Neece v. Greyhound Lines, supra.* 49 USCA § 319 makes 49 USCA § 20(11) and (12) applicable to motor carriers. 49 USCA § 20(11) states that unless provided for by a proviso of that section, no limitation of liability on a carrier will be valid. The proviso relevant to our consideration states that the carrier may limit liability for "baggage carried on passenger trains" (or on motor buses by virtue of 49 USCA § 319) by properly filing a tariff pursuant to lawful authorization of the Interstate Commerce Commission.

"The excepted 'baggage carried on passenger trains' refers solely to free baggage *checked through* on a passenger fare." (Emphasis added.) *New York, N.H. & H.R. Co. v. Nothnagle,* 346 U.S. 128, 97 L. Ed. 1500, 73 S.Ct. 986; *Neece v. Greyhound Lines, supra.*

Neither does the record show that defendant has attempted to comply with the provisions of any federal statute which might limit its liability. *Cray v. Pennsylvania Greyhound Lines,* 177 Pa. Super. 275, 110 A. 2d 892.

We note that defendant's cross-examination exceeded the bounds of relevancy when plaintiff was cross-examined concerning limitation of liability established by the Interstate Commerce Commission as related to a baggage check, since all the evidence showed the bag was not checked. *Motor Co. v. Ins. Co.,* 220 N.C. 168, 16 S.E. 2d 847.

The decision of the Court of Appeals is reversed. The case is remanded to that Court to be certified to the trial court for a new trial in accord with this opinion.

Reversed and remanded.