M. A. CROMPTON v. JOHN A. BAKER, TRADING AND DOING BUSINESS AS J. A. BAKER PACKING COMPANY.

(Filed 24 September, 1941.)

**1. Constitutional Law § 25b: Master and Servant § 63—**

The power of Congress to regulate interstate commerce includes the power to prescribe rules by which this commerce shall be governed, not only to the extent of aiding and protecting such commerce but also in prohibiting it.

**2. Same—**

While the manufacture of goods is not within itself interstate commerce, the shipment of manufactured goods interstate is such commerce, and Congress has the power to regulate the hours and wages of those employed in such manufacture when the employer at the time of production intends or expects the goods to move in interstate commerce and when the production of such goods, under other than prescribed labor standards, relates to and affects interstate commerce, and the Fair Labor Standards Act is a constitutional exercise of this power by the Congress.

**3. Master and Servant § 64—Employer processing goods for intrastate commerce and other goods for sale in interstate commerce is subject to Fair Labor Standards Act.**

The verdict of the jury supported by competent evidence established that defendant employer was engaged in slaughtering animals and in selling meat products to wholesale dealers in North Carolina, and also in processing animal grease and selling the tank grease and raw hides to dealers who shipped these products out of the State, and that defendant employer knew that these products would be transported in interstate commerce by such dealers. *Held:* The verdict of the jury supports judgment that defendant was selling part of his products with knowledge that shipment thereof in interstate commerce was intended (29 U. S. C. A. 215 [a] [1]) so as to render him subject to the Federal Fair Labor

Standards Act, and the fact that part of defendant's business was intra-state does not affect this conclusion, since the application of the Act cannot be governed by mere reference to percentages.

4. **Master and Servant § 65—Plaintiff employee held engaged in process-ing goods intended for sale in interstate commerce within meaning of Fair Labor Standards Act.**

Defendant employer, in the regular course of his business, slaughtered animals and sold meat products to wholesale dealers within the State, and also obtained grease from the offal of the animals by cooking in vats or tanks, and sold the tank grease and green hides to dealers who shipped same out of the State with knowledge on the part of the defend-ant that these products would be transported in interstate commerce. Plaintiff employee was employed as night watchman and night engineer and, in the course of his duties, fired the furnace, maintained the heat under the grease tanks, cooked the products, checked the hides and kept up the refrigeration as well as counted and checked-in the animals re-ceived during the night. *Held:* The facts disclosed by the record, con-sidered in the light most favorable to the plaintiff, discloses that he was employed in processing goods which were sold by his employer with knowledge that they would be shipped in interstate commerce, and his employment comes within the purview of the Fair Labor Standards Act (29 U. S. C. A. 203 [j]) and he is entitled to enforce as against the defendant the liability for failure to pay him the minimum wages pre-scribed by the statute for the time he was employed.

APPEAL by defendant from *Bobbitt, J.,* at February Term, 1941, of BUNCOMBE. No error.

*Claude L. Love and Roy A. Taylor for plaintiff, appellee.*
*J. W. Haynes for defendant, appellant.*

DEVIN, J.   This was an action instituted in the Superior Court of Buncombe County by an employee to recover unpaid minimum wages under the Fair Labor Standards Act of 1938. Issues raised by the pleadings were submitted to the jury, and answered in favor of the plaintiff, and from judgment rendered in accord with the verdict the defendant appealed to this Court.

The material facts determined by the verdict in the trial court were that the defendant was engaged in the meat packing business in the city of Asheville, North Carolina, and that in the course of his business he purchased livestock at points in the State of Tennessee and had same hauled to his premises in Asheville, where the animals were slaughtered and the meat products sold wholesale to dealers in North Carolina. It was also found that in his place of business and in regular course defend-ant obtained the grease from the offal of the animals by cooking in vats or tanks, and that he sold the tank grease, seven to ten barrels per week, and also green hides, to dealers who shipped all of these products out of

the State, and that this was done with knowledge that these products would thus be transported in interstate commerce by those to whom he sold.

It was further established by the verdict that Crompton, the plaintiff, served the defendant in his plant in Asheville as night watchman, and night engineer, and that, as was his duty to do, he fired the furnace, maintained the heat under the grease tanks, cooked the product, checked the hides and kept up the refrigeration, as well as counted and checked-in the animals received during the night, and that he thus performed functions necessary to the production of goods for interstate commerce within the meaning of the Fair Labor Standards Act.

It was found that the plaintiff's minimum hourly wage under the Act, plus one and one-half times for overtime, less the amount paid him by the defendant, for nineteen and two-sevenths weeks, would amount to $321.11, and that plaintiff was entitled to have an additional equal amount as liquidated damages.

The defendant, in the trial below, noted exception to the issues submitted and to certain portions of the judge's charge to the jury, but in his brief in this Court he bases his appeal entirely upon the denial of his motion for judgment of nonsuit (Rule 28, *In re Will of Beard,* 202 N. C., 661, 163 S. E., 748), and contends that the Fair Labor Standards Act has no application here, and that, if it does, the evidence fails to show that the defendant sold his products interstate, or with intent or expectation that they would be shipped in interstate commerce.

The Fair Labor Standards Act of 1938 (29 U. S. C. A. 201) provides that any employer who violates the provisions of the Act establishing a minimum wage (sec. 206), or maximum hours for a work week (sec. 207), for his employees who are engaged in the production of goods for interstate commerce, shall be liable to the employees affected "in the amount of their unpaid minimum wages or their unpaid overtime compensation, as the case may be, and in an additional equal amount as liquidated damages. Action to recover such liability may be maintained in any court of competent jurisdiction." Sec. 216.

Section 215 (a) (1) renders it unlawful for any person "to transport, offer for transportation, ship, deliver, or sell in (interstate) commerce, or to ship, deliver, or sell with knowledge that shipment or delivery or sale thereof in (interstate) commerce is intended, any goods in the production of which any employee was employed in violation of section 206 or section 207," with certain exceptions inapplicable here. In section 215 (b) it is declared that "for the purposes of subsection (a) (1) proof that any employee was employed in any place of employment where goods shipped or sold in commerce were produced, within ninety days prior to removal of the goods from such place of employment, shall be

*prima facie* evidence that such employee was employed in the production of such goods."

The power granted to the Congress by the Constitution to regulate commerce among the several states includes the power to prescribe the rules by which this commerce shall be governed. *Gibbons v. Ogden,* 9 Wheat., 1 (196). It extends not only to those regulations which aid and protect the commerce, but embraces those under which it may be prohibited. *Reid v. Colorado,* 187 U. S., 137; *Kentucky Whip & Collar Co. v. Illinois C. R. Co.,* 299 U. S., 334. While the manufacture of goods is not itself interstate commerce, the shipment of manufactured goods interstate is such commerce, and the rules under which they may be shipped are regulations which the Congress has exclusive power to prescribe.

The constitutionality of the Fair Labor Standards Act of 1938 was placed beyond question by two recent opinions of the Supreme Court of the United States, delivered by the present *Chief Justice,* in the cases of *U. S. v. F. W. Darby Lumber Co.,* 85 Law. Ed. (Adv.), 395, and *Opp Cotton Mills v. Administrator,* 85 Law Ed. (Adv.), 407, wherein the various provisions of the Act were analyzed and discussed. In the *Darby Lumber Company case* it was said: "The recognized need of drafting a workable statute and the well known circumstances in which it was to be applied are persuasive of the conclusion, which the legislative history supports, . . . that the 'production for commerce' intended includes at least production of goods, which, at the time of production, the employer, according to the normal course of his business, intends or expects to move in interstate commerce, although, through the exigencies of the business, all of the goods may not thereafter actually enter interstate commerce." It was also said in that case that the validity of the prohibition of the movement in interstate commerce of goods, which were produced in violation of this Act, turned on the question "whether the employment, under other than prescribed labor standards, of employees is so related to the commerce and so affects it as to be within the reach of the power of Congress to regulate it," and that the phrase "produced for interstate commerce" embraced "at least the case where an employer engaged in the manufacture and shipment of goods in filling orders of extrastate customers, manufactures his product with the intent or expectation that according to the normal course of his business all or some part of it will be selected for shipment to those customers."

Applying the appropriate sections of the Act of Congress as thus interpreted to the evidence in the case at bar, we reach the conclusion that the provisions of the Act are applicable, and that defendant's motion for judgment of nonsuit was properly denied. There was evidence

sufficient to sustain the findings upon which the judgment appealed from was predicated. A portion of defendant's business involved the transportation of goods interstate; the plaintiff, his employee, rendered services in the production of certain goods, to wit, tankage grease and hides, which were sold by the defendant to persons who he knew were doing an interstate business, and who resold and caused all of these goods to be shipped out of the State of North Carolina. Thus, the defendant may properly be said to have sold some of his products with knowledge that shipment thereof in interstate commerce was intended.

The fact that a part of defendant's business was intrastate, and that a portion of plaintiff's services were devoted to things which did not enter into interstate commerce could not prevent the application of the statute and the imposition upon the wage contract of the labor standards prescribed by the Act. The reference in sec. 215 (a) (1) is to "any goods." As was said in *Santa Cruz Fruit Packing Co. v. National Labor Relations Board,* 303 U. S., 453, "It is plain that the provision cannot be applied by a mere reference to percentages." *National Labor Relations Board v. Jones & Laughlin Steel Corp.,* 301 U. S., 1; *Hart v. Gregory,* 218 N. C., 184, 10 S. E. (2d), 644; *Capps v. R. R.,* 178 N. C., 558, 101 S. E., 216. Cases on this subject will be found collected and annotated in 132 A. L. R., 1443.

The word "produced" was defined in sec. 203 (j) of the Act to mean "produced, manufactured, mined, handled, or in any other manner worked on in any state; and for the purposes of this chapter an employee shall be deemed to have been engaged in the production of goods if such employee was employed in producing, manufacturing, mining, handling, transporting or in any other manner working on such goods, or in any process or occupation necessary to the production thereof, in any state." *Hart v. Gregory, supra;* 132 A. L. R., 1446.

The sweep of the Fair Labor Standards statute is far-reaching enough to include the employment of the plaintiff, under the facts disclosed by the record in this case, when considered in the light most favorable for him, and to entitle him to enforce as against the defendant the liability for failure to pay him the minimum wages prescribed by the statute for the time he was employed.

In the trial of the action and the ruling of the court below we find

No error.