## Cray, Appellant, *v.* Pennsylvania Greyhound Lines, Inc.

Argued November 16, 1954. Before RHODES, P. J., HIRT, ROSS, GUNTHER, WRIGHT, WOODSIDE, and ERVIN, JJ.

*Francis Taptich,* for appellant.

*William G. Dickie,* with him *Dickie, McCamey, Chilcote, Reif & Robinson,* for appellee.

OPINION BY ERVIN, J., January 14, 1955:

In this action in trespass to recover for the loss of baggage checked with an interstate carrier of passengers by motor vehicle the jury returned a verdict for

the plaintiff in the sum of $221.00, the full amount of the loss. The court below granted defendant's motion for judgment n.o.v. and judgment was entered in favor of the plaintiff and against the defendant in the sum of $25.00, the limitation of liability provided by the tariff regulations of the Interstate Commerce Commission for loss of baggage where there has been no declaration of excess value. This appeal followed.

On September 23, 1948, Patricia Cray, the plaintiff, purchased a transportation ticket from the Pennsylvania Greyhound Lines, Inc., the defendant, for a bus trip from Pittsburgh, Pennsylvania, to Los Angeles, California. The ticket was purchased at the bus terminal maintained by the defendant in Pittsburgh. At the time she purchased her ticket the plaintiff checked two pieces of luggage with the defendant. She testified: "I gave the luggage to the baggage agent and asked him if it was necessary to insure the baggage, because that was all my clothing and it was very valuable to me, and he said it was not necessary." Plaintiff was given a baggage check for her luggage. When she reached Los Angeles and presented her baggage check to reclaim her luggage she received one bag but did not receive the other—a leather bag containing clothes and some jewelry. This bag was never found or returned to the plaintiff. It is admitted that the value of the bag and contents was $221.00.

Appellant contends the appellee was negligent in that the carrier's employe with whom her baggage was checked gave misleading advice and information when he stated, in answer to her inquiry, that it was not necessary for her to insure her baggage. However, appellee contends it is bound by federal laws to operate under the Interstate Commerce Commission tariff regulations and under these regulations its liability is limited to $25.00 for the loss of the baggage. We

are, therefore, to determine whether the statement of the appellee's agent deprived appellant of a fair choice of alternative rates based on value and thus rendered ineffective the limitation of liability for loss of baggage contained in the tariff regulations of the Interstate Commerce Commission governing the operations of the appellee.

The trip undertaken by appellant from Pittsburgh, Pennsylvania, to Los Angeles, California, being interstate in character, questions relating to the limitations of liability of the carrier for loss of baggage checked by the passenger are governed by federal law. *Boston & Maine Railroad v. Hooker,* 233 U. S. 97, 34 S. Ct. 526, 58 L. Ed. 868, L.R.A. 1915 B, 450, Ann. Cas. 1915 D, 593; *Sayles v. Interstate Busses Corp.,* 187 Misc. 286, 66 N.Y.S. 2d 377; *New York, N. H. & Hartford R. Co. v. Nothnagle,* 346 U. S. 128, 73 S. Ct. 986, 97 L. Ed. 1500; See *Jackson & Perkins Company v. Mushroom Transportation Company, Inc.,* 351 Pa. 583, 41 A. 2d 635; 165 A.L.R. 1005, 1006.

By the 1935 addition to the Interstate Commerce Act, Part II, Congress assumed control of "the transportation of passengers or property by motor carriers engaged in interstate or foreign commerce . . ." and the regulation of such transportation was vested in the Interstate Commerce Commission. Part II of the Interstate Commerce Act, Feb. 4, 1887, c. 104, Part II, Sec. 202, as added Aug. 9, 1935, c. 498, 49 Stat. 543, and amended Sept. 18, 1940, c. 722, Title I, §17, 54 Stat. 920, Tit. 49 U.S.C.A. §302. Section 217(a) of the Interstate Commerce Act provides: "Every common carrier by motor vehicle shall file with the Commission, and print, and keep open to public inspection, tariffs showing all the rates, fares, and charges for transportation, and all services in connection therewith, of passengers or property in interstate or for-

eign commerce. . . ." 49 U.S.C.A. §317(a). By Section 219 of Part II of the Interstate Commerce Act, Sec. 319 of Tit. 49 U.S.C.A. the Congress has made the Carmack Amendment (Interstate Commerce Act, Pt. I, §20 (11, 12), 49 U.S.C.A. §20 (11, 12) applicable to common carriers by motor vehicle. Section 20 (11) of the Interstate Commerce Act provides that any interstate carrier "shall be liable . . . for any loss, damage, or injury to such property caused by it . . . and no contract, receipt, rule, regulation, or other limitation of any character whatsoever shall exempt such common carrier from the liability imposed." However, that same section also specifically provides that the "provisions . . . respecting liability for full actual loss . . . notwithstanding any limitation of liability . . . and declaring any such limitation to be unlawful . . . *shall not apply . . . to baggage carried on passenger trains.*" (Emphasis added) This section has been applied to sustain limitations of liability on the part of common carriers in cases involving the baggage of passengers on motor vehicle carriers. *Patton v. Pennsylvania Greyhound Lines,* 75 Ohio App. 100, 60 N.E. 2d 945; *Royalty v. Southeastern Greyhound Lines,* 75 Ohio App. 322, 62 N.E. 2d 200; *Kellett v. Alaga Coach Lines,* 34 Ala. App. 152, 37 So. 2d 137. The applicable rule is well stated in 13 C.J.S. Carriers, §877, p. 1706: "Under the Interstate Commerce Act as amended carriers must include in the schedule of rates filed regulations affecting passenger's baggage and the limitations of liability; and where a regulation limiting liability is so filed it is binding on the carrier and on the passenger, even though the passenger has no knowledge thereof; and this rule applies, in respect of a limitation based on the value of the baggage, even though the carrier does not inquire as to value. The effect of permitting the carrier to file regulations as to the pas-

senger's baggage which limit its liability except on payment of specified rates, is not to change the common-law rule that the carrier is an insurer of the safety of baggage against accidents not the act of God or the public enemy or the fault of the passenger, but the effect of such filing is to permit the carrier by such a regulation to obtain commensurate compensation for the responsibility assumed."

In the instant case there has been full compliance by the appellee with the provisions of the Interstate Commerce Act requiring the filing of tariff regulations. A certified copy of the tariff regulations under which the appellee operates was properly introduced into evidence at the trial. The tariff regulations established that the appellee was a motor vehicle carrier operating in interstate commerce and that free baggage, up to 150 pounds, with a valuation of $25.00 was allowed for each adult ticket. However, the regulations also provide that the carrier would not be responsible for loss or damage in excess of $25.00, unless a greater value was declared on the baggage when it was checked and a nominal additional charge paid. The excess valuation charges are 10¢ for each additional $100.00 value declared subject to a maximum valuation of $225.00. Tariffs lawfully established, including regulations limiting liability for passenger's baggage, have the effect of law, and are binding on both passenger and carrier. *Pennsylvania Greyhound Lines v. Wells,* D.C. Mun. App., 41 A. 2d 837.

Appellant relies on *New York, N. H. & H. R. Co. v. Nothnagle,* 346 U.S. 128, 73 S. Ct. 986, 97 L. Ed. 1500, which contains a review of the law applicable to carriers' liability for passengers' baggage and the effect of tariff regulations limiting the liability of carriers. This case is distinguishable on its facts from the case before us in that it did not involve free bag-

gage checked through on a passenger fare. However, Justice CLARK in his opinion stated: "But only by granting its customers a fair opportunity to choose between higher or lower liability by paying a correspondingly greater or lesser charge can a carrier lawfully limit recovery to an amount less than the actual loss sustained. Boston & Maine R. Co. v. Piper, 1918, 246 U.S. 439, 444-445, 38 S. Ct. 354, 355, 62 L. Ed. 820; Union Pacific R. Co. v. Burke, 1921, 255 U.S. 317, 321-323, 41 S. Ct. 283, 284-285, 65 L. Ed. 656; cf. The Steamship Ansaldo San Giorgio I v. Rheinstrom Bros. Co., 1935, 294 U. S. 494, 497-498, 55 S. Ct. 483, 484-485, 79 L. Ed. 1016. Binding respondent by a limitation which she had no reasonable opportunity to discover would effectively deprive her of the requisite choice; such an arrangement would amount to a forbidden attempt to exonerate a carrier from the consequences of its own negligent acts."

The requirement that a passenger must be offered a fair opportunity to choose between higher or lower liability before an interstate carrier can limit recovery for loss of baggage to an amount less than the actual loss sustained does not require that the passenger be actually informed that a choice of rates is available. In *Kellett v. Alaga Coach Lines,* supra, when the plaintiff sued to recover $1,000.00 as full value for the loss of a trunk which had been checked by her with the defendant carrier in connection with and incident to her interstate journey by bus, and the carrier defended on the ground its tariff schedule filed with the Interstate Commerce Commission and providing for a limitation of liability precluded recovery, the plaintiff's contention that the carrier had failed in their legal requirement to give her a free choice of rates was rejected, the court holding that it was not essential to applicability of tariff regulations of a common carrier by

motor vehicle in interstate commerce that a passenger be informed that a choice of rates is available, *the presumption being that passenger knew the provisions of such schedule.*

In the instant case the appellant had ample opportunity to discover there was a choice of rates available. The baggage check which she received made reference to the tariff regulations under which appellee operated and under which the baggage was being carried. The ticket used by the appellant for the transportation also referred to the tariff regulations under which the baggage was transported. In addition the appellee had signs posted in the bus terminal referring to the limitations of liability for checked baggage and advising how travelers could increase their protection to a maximum of $225.00 for a slight additional charge of 10¢ for each additional $100.00. As to the location of these notices to travelers the terminal manager testified: "We have one framed sign with a glass face denoting our baggage liability posted in the center of the ticket office windows where all passengers must purchase tickets at Pittsburgh before checking baggage; we have two baggage checking windows in the Terminal and we have two liability signs of different wording posted at each window location in direct view of the passengers checking baggage." When it is considered that appellant not only had actual notice of the limitations of liability on checked baggage by reason of the reference to the tariff regulations on both her transportation ticket and baggage check but also had ample opportunity to learn of such limitations from the signs in large, bold type posted at both baggage windows and the ticket window it is not an unreasonable inference that her inquiry as to the necessity of insuring her baggage was in fact prompted by such notice. Her inquiry, at least, belies any claim she

was totally unaware of the possibility of obtaining additional protection against loss of her baggage. In *Secoulsky v. Oceanic Steam Nav. Co.*, 223 Mass. 465, 112 N.E. 151, it was held that a traveler, unable to read English, who sought to recover for the full amount of the loss he sustained through the negligence of the carrier in losing his baggage, was bound by the limitation of liability contained in his ticket, though the court said that the testimony would warrant a finding that "the plaintiff, through an interpreter, asked the person in charge of the defendant's ticket office to have his baggage insured, offering to pay therefor rather than to take any chance of loss. 'I told him that I had valuable things, valuable articles and I wanted it insured and he said it was not necessary.' 'It is not necessary . . . and it will come.' "

Where, as here, a motor vehicle carrier engaged in interstate commerce has duly filed tariff regulations with the Interstate Commerce Commission which include a provision limiting the carrier's liability for loss of free baggage to $25.00, unless a higher valuation is declared and paid for, has referred to such tariff regulations on its transportation tickets and baggage checks, and has posted prominent notices of the limitation of its liability in conspicuous locations on the windows of its ticket and baggage checking windows, we hold that such carrier has provided a fair opportunity for passengers to choose between higher or lower liability by paying a correspondingly greater or lesser charge; and the limitation of liability contained in its published tariff regulations cannot be waived by the statement of a baggage agent to a passenger that it is not necessary to insure her baggage, such statement being nothing more than a mere prophecy that her baggage will arrive intact at her destination.

Order affirmed.