MARIETTA NEECE v. RICHMOND GREYHOUND LINES, INC.

(Filed 18 September, 1957.)

**1. Carriers § 1—**

Loss sustained as a result of a movement of goods in interstate commerce is controlled by the application of appropriate Federal statutes.

**2. Carriers § 15—**

The Interstate Commerce Act does not provide for limitation of liability of a passenger bus carrier for baggage of passengers, 49 USCA 20(11), but does grant to regulatory bodies the power to prescribe such limitation, 49 USCA 302, and certification by the Interstate Commerce Commission of a tariff providing for such limitation is sufficient to show that the Commission had expressly authorized such limitation.

**3. Carriers § 1: Contracts § 10—**

Common carriers may, by contract, limit their liability for negligence when expressly authorized to do so by statute or by a regulatory body with power to grant that privilege.

**4. Same—**

The law does not look with favor on provisions which relieve a party from liability for his own wrong, and any doubt as to the meaning of such contractual provision or its application will be resolved against the carrier.

**5. Carriers § 1—**

Before a motor carrier can limit its liability for negligent loss or damage to property entrusted to it, it must show that it received the property as a

547

common carrier, that it issued a written receipt which contained the
asserted limitation, and that the Interstate Commerce Commission had
expressly authorized the limitation based on a rate differential, and if
any one of these conditions is not shown to exist the asserted limitation
has no effect.

**6. Carriers § 15—**

A bus passenger has the right to carry on the bus with her and under
her control her baggage, in which event it is in the custody of the passenger
and the carrier has no responsibility with respect thereto, or she may
check her baggage and impose on the carrier a liability up to $25 in the
event of its loss, or she may declare a greater value than $25, and, by the
payment of extra compensation, impose on the carrier a liability up to
$225 in the event of its loss.

**7. Same—**

A bus carrier is under no duty to accept for transportation as baggage
packages exceeding the dimensions given in the tariff, and when it receives
from a passenger a package of dimensions in excess of those limited in the
tariff, the carrier is a gratuitous bailee of the package and is liable for
its full value for loss occasioned by its gross negligence, the limitation of
liability specified in the tariff for baggage not being applicable when the
package does not come within the specifications of baggage contained in
the tariff.

**8. Same—**

Proof that a passenger delivered to a bus carrier a package not coming
within the tariff definition of personal baggage, and that the carrier failed
to return the package on demand, is sufficient to be submitted to the jury
on the issue of the gross negligence of the carrier, or, if jury trial is waived,
to require an affirmative finding on the issue by the court.

APPEAL by plaintiff from *Mallard, J.,* September 1956 Civil Term of
ALAMANCE.

Plaintiff seeks to recover the sum of $619, the asserted value of a
piece of personal baggage. Prior to 3 July 1954 plaintiff purchased a
ticket from Greensboro to New York and return. The ticket entitled
plaintiff to transportation on the buses of the defendant. On the trip
from Greensboro to New York she carried with her three pieces of
luggage, namely, a train case, a hat box, and a wardrobe bag or case.
She carried all three of these articles on the bus in the rack over the
seats, from Greensboro to New York. They contained wearing apparel
belonging to plaintiff.

On 3 July 1954 she went to defendant's station in New York for the
purpose of returning to Greensboro. She did not stop in the baggage
room or make other stops in the station but went through the station
to the point where the bus was awaiting passengers. As she started to
enter the bus, she was advised by the bus driver that she could not take

her wardrobe case in the bus with her. A redcap, an employee of defendant, was standing by the bus. Plaintiff surrendered her wardrobe case to the redcap so that the baggage might be placed in the baggage compartment of the bus. She was given a check showing that the baggage was checked to Richmond where she would have to get it from the bus driver, that being the terminal of the bus on which she was riding and the point at which she would change to another bus. On the back of the baggage check which was given to her was a statement reading: ". . . the issuing carrier will *NOT* be liable for a greater amount than $25.00 to any one passenger in the event of loss or damage to property covered by this and/or other baggage checks issued to the same passenger, unless a greater amount is declared in writing at the time of checking, in which case charges for excess value will be collected, and a receipt issued." Plaintiff was not advertent to this provision when the check was delivered to her. The bus driver declined to permit plaintiff to take her wardrobe case on the bus with her on the return trip because of its size measuring approximately 26 inches square.

Defendant introduced in evidence excerpts from tariffs filed by it with the Interstate Commerce Commission. Rule 1 of the tariffs provides: ". . . the rules, regulations, rates, and charges published in this tariff apply in the checking, storage, and transportation of baggage . . ." Rule 2, captioned "BAGGAGE DEFINED," requires all property transported in baggage service to be packed in described containers and marked. It permits the transportation as baggage of (a) wearing apparel, toilet articles, and similar personal effects, (b) property for the commercial convenience of the passenger such as catalogues, sample merchandise, *et cetera,* (c) miscellaneous articles such as baby carriages, carpenters' or mechanics' tools. Rule 3 lists specific articles which will not be accepted as baggage. Rule 4, entitled "LIMITATIONS," provides: "No single piece of baggage will be accepted that, in its greatest dimensions, exceeds 24 inches in height, and 24 inches in width or breadth, or 45 inches in length, except that skis and/or ski poles may exceed 45 inches in length. . . . (b) Value: Baggage for one passenger declared to exceed two hundred and twenty-five ($225) dollars in value for one or more pieces will not be accepted for checking or transportation; nor will any single piece of baggage or property be accepted for checking and transportation that is valued at more than two hundred twenty-five ($225) dollars, regardless of the number of tickets presented for checking."

Rule 5, entitled "FREE BAGGAGE ALLOWANCE," provides: "Baggage, consisting of articles which may be handled in interstate baggage service, will be transported without additional charge, when not exceeding the free weight allowances or the free value allowances shown below . . .

"Free Baggage Allowance

| Weight | . | Value |
|--------|---|-------|
| For each Adult Ticket 150 pounds — | | $25.00" |

"Rule
No.
7    LIABILITY:

. . . .
"(b) Carriers, parties hereto, will not be responsible for loss or damage to baggage in excess of the amounts shown below, and then only to the extent of the actual loss or damage sustained.

"(1) The maximum free value allowance, as authorized in Rule 5 and 6 herein, in the event no excess value has been declared and excess value charges paid thereon."

"(c) Carriers, parties to this tariff, will NOT accept liability for a greater value than two hundred and twenty-five (225) dollars on any single piece of baggage, nor for a greater value than two hundred and twenty-five ($225) dollars for each full fare ticket or one hundred and twelve dollars and fifty cents ($112.50) for each one-half fare ticket presented, regardless of the number of pieces of baggage, and in no event shall the liability exceed the actual value of the baggage, at the time of checking."

The plaintiff's wardrobe case has never been delivered to her. She filed claim therefor. Defendant asserts that its liability, if any, is limited to the sum of $25 as fixed in the tariff.

Basing its findings on the tariff, the court concluded that plaintiff was limited in the amount that she could recover to $25. Judgment for that amount was entered in favor of plaintiff, and she appealed, asserting that she was entitled to compensation for the full amount of her loss.

*C. C. Cates, Jr., and W. R. Dalton, Jr., for plaintiff appellant.*
*Jordan & Wright and Perry C. Henson for defendant appellee.*

RODMAN, J.  The loss which plaintiff sustained results from a movement of goods in interstate commerce; hence, the rights of the parties must be determined by the application of appropriate Federal statutes. *St. Sing v. Express Co.,* 183 N.C. 405, 111 S.E. 710; *Scott v. Express Co.,* 189 N.C. 377, 127 S.E. 252; *Crompton v. Baker,* 220 N.C. 52, 16 S.E. 2d 471.

Congress, by the Interstate Commerce Act (Part I, 49 USCA 1-37) enacted in 1906, sanctioned a limitation of liability by carriers subject

to the Act. *Adams Exp. Co. v. Croninger,* 226 U.S. 491, 57 L. Ed. 314; *Boston & M. R. Co. v. Hooker,* 233 U.S. 97, 58 L. Ed. 868; *Galveston H. & S. A. R. Co. v. Woodbury,* 254 U.S. 357, 65 L. Ed. 301. The Cummins Amendment adopted in 1915 prohibited carriers from limiting their liability. *Adams Express Co. v. Darden,* 265 U.S. 265, 68 L. Ed. 1010. Neither of these statutory provisions seemed to Congress to accord equitable treatment to both carrier and shipper.

In 1916 the second Cummins Amendment was adopted. It forbids limitation of liability except as there expressly provided for. These several provisions are now codified as 49 USCA 20(11). The provisions of that section material to this case read: "Any common carrier . . . receiving property for transportation . . . shall issue a receipt or bill of lading therefor and shall be liable to the lawful holder thereof for any loss, damage, or injury to such property caused by it . . . and no contract, receipt, rule, regulation, or other limitation of any character whatsoever shall exempt such common carrier . . . from the liability imposed; . . . notwithstanding any limitation of liability or limitation of the amount of recovery or representation or agreement as to value in any such receipt or bill of lading, or in any contract, rule, regulation, or in any tariff filed with the Interstate Commerce Commission; and any such limitation, without respect to the manner or form in which it is sought to be made is declared to be unlawful and void: . . . *Provided, however,* That the provisions hereof respecting liability for full actual loss, damage, or injury . . . shall not apply, first, to baggage carried *on passenger trains or boats, or trains or boats carrying passengers* (emphasis supplied) ; second, to property . . . received for transportation concerning which the carrier shall have been or shall be expressly authorized or required by order of the Interstate Commerce Commission to establish and maintain rates dependent upon the value declared in writing by the shipper or agreed upon in writing as the released value of the property, in which case such declaration or agreement shall have no other effect than to limit liability and recovery to an amount not exceeding the value so declared or released . . . and any tariff schedule which may be filed with the commission pursuant to such order shall contain specific reference thereto and may establish rates varying with the value so declared and agreed upon . . ."

When these statutory provisions were enacted, the term "common carrier" did not include a motor carrier. In 1935 Congress enacted the Motor Carrier Act, now Part II of the Interstate Commerce Act (49 USCA 301-327). The Act, by its terms, applies to the transportation of passengers or property by motor carriers engaged in interstate or foreign commerce. (49 USCA 302) It imposes on the Commission the duty "To regulate common carriers by motor vehicle . . . and to that end the Commission may establish reasonable requirements with respect

to continuous and adequate service, transportation of baggage and express . . . and safety of operation and equipment." 49 USCA 304.

49 USCA 316 provides: "It shall be the duty of every common carrier of passengers by motor vehicle . . . to establish, observe and enforce just and reasonable . . . fares, and charges, and just and reasonable regulations and practices relating thereto, and to the issuance, form, and substance of tickets, the carrying of personal, sample, and excess baggage, the facilities for transportation, and all other matters relating to or connected with the transportation of passengers in interstate or foreign commerce . . ." Other portions of sec. 316 impose responsibility for establishing reasonable rates and facilities substantially in conformity with the provision of other common carriers subject to Part I of the Interstate Commerce Act (49 USCA 6). Transportation without the filing of tariffs is forbidden.

Provision was made for motor carriers to limit their liability by sec. 319 which provides: "The provisions of section 20(11) and (12) of this title, together with such other provisions of chapter 1 of this title (including penalties) as may be necessary for the enforcement of such provisions, shall apply with respect to common carriers by motor vehicle with like force and effect as in the case of those persons to which such provisions are specifically applicable."

Sec. 20 of Part I authorizing carriers other than motor carriers to limit their liability permits limitation with respect to "baggage carried on passenger trains or boats, or trains or boats carrying passengers." When the Motor Carrier Act was adopted in 1935 and sec. 20 was written as quoted above, the language permitting limitation of liability with respect to baggage of passengers was not expressly enlarged to include baggage carried on motor buses. Did Congress, by making sec. 20 applicable to motor carriers, intend to enlarge the first provision permitting limitation of liability by adding "or motor carriers" so as to read "to baggage carried on passenger trains or boats *or motor vehicles,* or trains or boats *or motor buses* carrying passengers?"

We have found no Federal decision or rule which gives a definite answer. *Mr. Justice Clark,* in a footnote to his opinion in *New York, N. H. & H. R. Co. v. Nothnagle,* 346 U.S. 128, 97 L. Ed. 1500, quotes from the report of the Congressional Committee accompanying the 1916 amendment to the Interstate Commerce Act thus: "Further the commission has held that *baggage carried on passenger trains upon the ticket of a passenger* is within the terms of law. Whether this construction is correct or incorrect, it is palpable that *baggage so transported on a passenger fare* ought not to be subject to the rule which controls ordinary freight, and in the bill now reported it is excepted in express terms." The report explained the aim of the 1916 legislation: "to restore the law of full liability as it existed prior to Carmack amend-

ment of 1906, so that when property is lost or damaged in the course of transportation under such circumstances as to make the carrier liable recovery is had for full value or on the basis of full value. From this general rule there is excepted, first, baggage carried on passenger trains. This is done for obvious reasons."

The Ohio courts hold the Act was in effect amended so as to read "or motor buses" as contended by defendant. *Patton v. Pennsylvania Greyhound Lines,* 60 N.E. 2d 945. We reach a different conclusion. Common carriers may, by contract, limit their liability for negligence when expressly so authorized by statute. That was the holding in *Boston & M. R. Co. v. Hooker, supra.* That case arose under the Carmack Amendment and prior to the adoption of the Cummins Amendments. The rule there enunciated is of course still applicable when the provisions of the Cummins Amendments have been complied with. A carrier may also limit its liability when authorized so to do by a regulatory body with power to grant that privilege. *Knight v. Coach Co.,* 201 N.C. 261, 159 S.E. 311; *Russ v. Telegraph Co.,* 222 N.C. 504, 23 S.E. 2d 681. The law does not look with favor on provisions which relieve one from liability for his own wrong. Any doubt as to the meaning of the contract or its application will be resolved against the carrier. *Union Pacific R. Co. v. Burke,* 255 U.S. 317, 65 L. Ed. 657; Carriers, 13 C.J.S. sec. 89; 10 Am. Jur. sec. 1752, p. 456.

The fact that the first permission for limitation of liability in the Federal statute is not applicable to baggage transported by motor carriers does not mean that they are not permitted to limit their liability under other portions of the Act. The statute, 49 USCA 319, by express terms declares that motor carriers may do so. The authority of motor carriers to limit their liability is found in the second portion of the provision. Cases recognizing the right of motor carriers and air carriers to limit their liability point to the provisions of the statutes giving the regulatory bodies, Interstate Commerce Commission and Civil Aeronautics Authority, power to regulate rates and conditions of travel as supporting limitation of liability granted in duly filed tariffs. *Argo v. Southeastern Greyhound Lines,* 33 S.E. 2d 730 (Ga.); *Cray v. Pennsylvania Greyhound Lines,* 110 A. 2d 892 (Pa.); *Kellett v. Alaga Coach Lines,* 37 So. 2d 137 (Ala.); *Wilkes v. Braniff Airways,* 288 P. 2d 377 (Okla.); *Lichten v. Eastern Airlines,* 189 F. 2d 939, 25 A.L.R. 2d 1337, and annotations; *Herman v. Capital Airlines,* 104 F. Supp. 955; *S. Toepfer, Inc. v. Braniff Airways,* 135 F. Supp. 671.

Before a motor carrier can limit its liability for negligent loss or damage to property entrusted to it, it must show: (1) it received the property as a common carrier; (2) it issued a written receipt which contained the asserted limitation; (3) the Interstate Commerce Com-

mission has expressly authorized the limitation which is based on a rate differential.

If each of these conditions is not shown to exist, the asserted limitation has no effect. *New York, N. H. & H. R. Co. v. Nothnagle, supra; Caten v. Salt City Movers & Storage Co.,* 149 F. 2d 428; *Union Pacific R. Co. v. Burke, supra; Southeastern Exp. Co. v. Pastime A. Co.,* 299 U.S. 28, 81 L. Ed. 20, 57 S. Ct. 73; *Sambur v. Hudson Transit Lines, Inc.,* 112 N.Y.S. 2d 514, 116 N.Y.S. 2d 500.

The excerpts from the tariff do not expressly show that it was authorized or approved by the Interstate Commerce Commission, but since it was certified by the Commerce Commission as "issued December 15, 1951, effective February 15, 1952, except Intrastate in Kansas January 1, 1952," we treat it as sufficient to show that the Commission had expressly authorized the tariff on which defendant relies.

Under the common law, carriers were, as an incident of the transportation of passengers, required to carry without additional cost a reasonable amount of a passenger's wearing apparel called baggage. *Hannibal & St. J. R. Co. v. Swift,* 12 Wall. 262, 20 L. Ed. 423; *Bacon v. Pullman Co.,* 159 Fed. 1, 14 Ann. Cas. 516, and annotations, *cert.* denied 210 U.S. 433, 52 L. Ed. 1136; 13 C.J.S. 1683. Properties in excess of the reasonable requirements of the passenger were not baggage for which the carrier was liable as an insurer. *N. Y. C. & H. R. R. R. Co. v. Fraloff,* 100 U.S. 24, 25 L. Ed. 531.

Plaintiff, under the provisions of her ticket, had a right to carry on the bus with her under her control her baggage. *Santa Fe Trail Transp. Co. v. Newlon,* 159 P. (2d) 713 (Okla.). When so carried, baggage is in the custody of the passenger and no responsibility with respect thereto is imposed on the carrier.

The tariff gave plaintiff the right to check her baggage and to impose on the carrier a liability up to $25 in the event of its loss. The carrier received compensation for this service when it sold plaintiff her ticket. If plaintiff deemed her baggage of greater value than $25, she had a right, by the payment of extra compensation, to impose a liability on the carrier up to $225 in the event of its loss.

Defendant could not deprive plaintiff of any one of the three options which her ticket, the contract of carriage, gave her with respect to her baggage as that term is defined in the tariff. Hence, it is necessary to examine the tariff to see what baggage the tariff deals with. The baggage to which the tariff relates is defined in Rule 4, headed "LIMITATIONS": "No single piece of baggage will be accepted that, in its greatest dimensions, exceeds 24 inches in height, and 24 inches in width or breadth, or 45 inches in length . . ." These dimensions have a pertinency to the limitation of liability. Generally those who travel by bus take relatively short journeys; hence, they need but limited quantities

of apparel to serve their needs on the journey. A limitation of $225 might reasonably apply to a bag 24 inches square.

The carrier was under no duty to accept for transportation as baggage packages exceeding the dimensions given in the tariff. Defendant had a right under its tariff to prohibit plaintiff taking on the bus with her the wardrobe bag, because of its size. Having availed itself of its right under the tariff and prohibited plaintiff from retaining personal custody of her property, it cannot now use the tariff as a shield to protect it against its negligence. The tariff is not a cloak to be worn or discarded as carrier may elect. Both carrier and passenger are bound by its terms.

Where a carrier of passengers receives and handles a package for a passenger which does not qualify as baggage which the passenger is entitled to have transported free, the carrier is a gratuitous bailee of the package. As a gratuitous bailee, it is liable only if the loss be occasioned by its gross negligence. *Perry v. R. R.*, 171 N.C. 158, 88 S.E. 156; *Kindley v. R. R.*, 151 N.C. 207, 65 S.E. 897; *Brick v. A. C. L.*, 145 N.C. 203; *Trouser Co. v. R. R.*, 139 N.C. 382; 6 Am. Jur. 358.

Plaintiff alleges that her loss is due to defendant's negligence. Defendant denies each of the asserted acts of negligence. There has been no finding with respect to this basic issue. Defendant admits receipt of plaintiff's bag and its failure to return it on demand. This admission is sufficient to take the case to the jury or to require a finding by the court if a jury trial be waived. *Perry v. R. R., supra; Beck v. Wilkins*, 179 N.C. 231, 102 S.E. 313; 9 A.L.R. 545; *Hunter Trucking Co. v. Glatzer*, 136 N.Y.S. 2d 857, 6 Am. Jur. 459.

If it be found that plaintiff's property was lost by the gross negligence of defendant as alleged, she is entitled to full compensation for her loss.

Error.