**Joan A. Julich KIERNAN, Appellant and Cross-Appellee,**

v.

**GREYHOUND LINES, INC., and Oran E. Lang, Appellees and Cross-Appellants.**

**No. 52748.**

Supreme Court of Iowa.

Feb. 6, 1968.

———◆———

Herrick, Langdon, Belin & Harris, Des Moines, for appellant and cross-appellee.

Davis, Huebner, Johnson & Burt, Des Moines, for appellees and cross-appellants.

BECKER, Justice.

Plaintiff filed action against defendants for negligent loss of two pieces of luggage. Defendant Oran E. Lang is Greyhound's agent in Des Moines. In presenting this case the parties make no distinction as to the relative posture of the two defendants. Nor do we. For the purposes of this case we treat the legal principles as applicable both to defendant Greyhound and to its agent Lang.

Defendants denied the allegations; they affirmatively defended on grounds under applicable statutes, regulations and filed tariffs their liability was limited to $25. Plaintiff's reply denied the affirmative allegations. She also pleaded estoppel and waiver of right to rely on the tariffs. At the close of all evidence the court directed a verdict for plaintiff for $25. Both sides appealed but defendants here abandoned their appeal.

Plaintiff had resided in Phoenix, Arizona for about two years. She decided to return to Des Moines for permanent residence and had a large amount of personal prop-erty to bring back to her former home. Her baggage consisted of eight pieces of luggage. She checked the various common carriers to determine the best way to go to Des Moines and to ship her luggage. She inquired about rates from Railway Express, American Express, Continental, and the airlines. She chose Greyhound because she could carry 100 pounds free.

When plaintiff brought her packages to the bus terminal on October 15 the terminal was crowded. She first purchased her ticket. At that time she tried to discuss a few matters about her baggage but was told the baggage clerk would answer all questions. After purchasing her ticket she went to the baggage counter where there were three or four persons in front of her and several behind her. One man was behind the counter. Plaintiff states she asked the attendant if her luggage was insured. "He told me that I was covered by insurance, and I asked him, I said, 'Are you sure?' and he said 'Yes', and I said 'My luggage is worth approximately $2,000.00', and I said 'You're sure? Because,' I said, 'If you're not', I said 'I'll make other arrangements, or I'll ship them package express', and he said 'Don't worry about it, honey. They're going to get there okay.'"

On cross-examination plaintiff was asked if she had seen any signs limiting baggage liability to $25. She stated she saw no such signs. She received eight baggage checks each bore the legend on the face of the check "Baggage liability limited to $25. 'See over.'" The reverse side of the ticket was printed:

"Contract notice to passengers. (1) The party accepting this check hereby agrees that no claim in excess of $25.00 for all baggage checked on one full fare ticket and in excess of $12.50 on one-half fare ticket shall be made against the issuing company for loss or damage to property covered by this and/or other baggage checks issued to the same passenger unless a greater amount is declared in writing at time of checking, in which case charges for excess value will

be collected and an excess valuation receipt will be issued.

"(2) This check is accepted subject to all conditions of published tariffs."

Mrs. Kiernan's baggage was weighed and she received an excess baggage declaration. She was charged and paid $8.00 for excess weight. The baggage clerk filled in the declaration. At this time she told him the value of her luggage was well in excess of $2000, but he entered no value on the excess weight declaration. Mrs. Kiernan signed the declaration.

Upon arrival in Des Moines plaintiff found all eight bags present. She delivered the checks to defendant Lang, the Des Moines baggage clerk, and picked up one of the bags. At this point she and her mother decided there was too much to handle. She thereupon left the baggage at the terminal. Mr. Lang assured her they would take care of her property. When she returned the next day the two largest bags were missing. The two bags and contents are stipulated to be worth $1722.88.

Plaintiff also testified at no time did she consult a time table or any other written material put out by the company but relied on oral inquiry to company officials for all information. She was an experienced traveler by rail, air and bus. She assumed she was entitled to a free weight allowance but knew nothing of a free value allowance.

The pertinent portions of defendants' tariff (except as otherwise quoted in the body of this opinion) are:

"Liability: (a) Carriers, parties to this Tariff, will not be responsible for loss of or damage to Baggage in excess of the amounts shown below, and then only to the extent of the actual loss or damage sustained computed on the basis of the actual value of the Baggage at the place and time of checking.

"(1) The Maximum Free Value Allowance, as authorized in Rule No. 5 herein, in the event no Excess Value has been declared and Excess Charges paid thereon.

"(2) The Declared Value of the Baggage at the time of checking and upon which Excess Value Charges as shown herein have been paid. (See also Paragraph (b))

"(b) Carriers, parties to this Tariff, will NOT accept liability for a greater value than two hundred and twenty-five ($225.00) dollars on any single piece of Baggage, nor for a greater value than two hundred and twenty-five ($225.00) dollars for each full fare ticket or one hundred and twelve dollars and fifty cents ($112.50) for each half-fare ticket presented, regardless of the number of pieces of Baggage, and in no event shall the liability exceed the actual value of the Baggage, at the place and time of checking. * * *

"Charges for Baggage of Excess Value:

"(a) Charges for Excess Value must be prepaid and are separate and distinct from the charges for Excess Weight.

"(b) Collections for Excess Value will not be made for movements to any stations beyond that to which the Baggage is checked.

"(c) When collection is made for Excess Value, an 'Excess Check' or 'Excess Receipt' will be issued. * * *

"(e) Unless a greater value is declared by a passenger, and charges paid for Excess Value at time of checking, it shall be considered that the value of Baggage, belonging to, or checked for, a passenger, is not in excess of the Free Value Allowance specified in Rule No. 5, and Carriers, parties to this Tariff, will not accept liability for a greater sum in case of loss or damage.

"(f) If a passenger declares a greater value than that specified in Rule No. 5, Section C, a charge, at the rate of ten (10¢) cents for each additional one hundred ($100.00) dollars valuation or fraction thereof, shall be assessed, but the total valuation may not exceed the limitations in Rule No. 4, Section C (See Exception).

The Minimum Charge for Excess Value will be ten (10¢) cents.

"(g) The Declaration of Value in excess of the Free Value Allowance shall be on a form prescribed by the checking Carrier."

I. The loss sustained by plaintiff occurred while the goods were in interstate commerce. The rights of the parties are determined by federal law. Fay v. Chicago, R. I. & P. R. Co., 186 Iowa 573, 173 N.W. 69; Neece v. Richmond Greyhound Lines, 246 N.C. 547, 99 S.E.2d 756.

II. We believe this case is controlled by what has been said by the United States Supreme Court in New York, N. H., & Hartford R. Co. v. Nothnagle, 1953, 346 U. S. 128, 73 S.Ct. 986, 97 L.Ed. 1500 (hereafter referred to as Nothnagle).

In Nothnagle a woman passenger delivered her hand bag (which she had carried with her on the train) to a Red Cap in New Haven when she was changing trains. No baggage check had been issued. "The suitcase vanished and respondent sued. At trial in the Meriden City Court the parties stipulated that the baggage and contents actually worth $615 were lost due to petitioner's negligence. Petitioner insisted, however, that its liability as an interstate carrier was governed by a tariff schedule filed with the Interstate Commerce Commission which limited recovery for baggage loss to $25 unless the passenger had in writing declared a higher valuation."

In deciding this case Mr. Justice Clark, speaking for a unanimous court concluded the opinion with the following recognition of policy. "cf. Watson Bros. Transp. Co. v. Feinberg Kosher Sausage Co., 8 Cir., 1951, 193 F.2d 283, 286. 'The great object of the law governing common carriers was to secure the utmost care in the rendering of a service of the highest importance to the community. A carrier who stipulates not to be bound to the exercise of care and diligence "seeks to put off the *essential duties* of his employment." It is recognized that the carrier and the individual customer are not on an equal footing. "The latter * * * cannot afford to higgle or stand out and seek redress in the courts." ' Santa Fe, P. & P. R. Co. v. Grant Bros. Construction Co., 1913, 228 U.S. 177, 184–185, 33 S. Ct. 474, 477, 57 L.Ed. 787. In sum, respondent cannot be held bound by petitioner's limitation,".

The interstate Commerce Act, specifically Title 49, United States Code, section 20(11) provides the carrier shall issue a receipt or bill of lading, shall be liable for any loss, damage or injury to property, prohibits limitations on liability for such loss but excepts baggage carried on passenger trains or boats and excepts property permitted to be carried at rates which are dependent on value declared in writing by the shipper or agreed upon in writing as the release value of the property. The Supreme Court held that: *"The excepted 'baggage carried on passenger trains' refers solely to free baggage checked through on a passenger fare."* (emphasis supplied) New York, N. H. & H. R. Co. v. Nothnagle, 346 U.S. 128, 134, 73 S.Ct. 986, 989, 97 L.Ed. 1500. The court held attempted limitation of liability clearly void unless it came within the above exception.

We assume federal law applies Title 49, section 20(11) to motor carriers. Patton v. Pennsylvania Greyhound Lines, 75 Ohio App. 100, 60 N.E.2d 945; Contra, Cray v. Pennsylvania Greyhound Lines, 177 Pa.Super. 275, 110 A.2d 892; Contra, Neece v. Richmond Greyhound Lines, supra.

The law relating to limitation of liability for lost baggage as it existed before Nothnagle should be examined.

III. The leading case is Boston & M. R. R. v. Hooker, (1914) 233 U.S. 97, 34 S. Ct. 526, 58 L.Ed. 868. Hooker held where a tariff is filed it is binding on the carrier and the passenger. The effect given to Hooker is well set out in Argo v. Southeastern Greyhound Lines, Inc. (1945) 72 Ga.App. 309, 33 S.E.2d 730, 732.

"The United States Supreme Court in the Hooker case dealt with this subject at length and one of the principles there ruled is to the effect, that a regulation contained in the published tariffs of an interstate carrier by rail on file with the Interstate Commerce Commission, limiting its baggage liability to a certain amount, unless a greater value is declared by the owner and the excess charges paid, is binding upon the passenger in case of loss of the baggage through the carrier's negligence, regardless of the passenger's lack of knowledge or assent to such regulation."

With few exceptions this rule has resulted in limitation of liability to the posted rate. Green Bay Lumber Co. v. Chicago B. & Q. R. Co., Iowa, 284 N.W. 369; Herminghausen v. Adams Express Co., 167 Iowa 230, 149 N.W. 234; Kellett v. Alaga Coach Lines, Inc., 34 Ala.App. 152, 37 So.2d 137; Argo v. Southeastern Greyhound Lines, Inc., supra, and Cray v. Pennsylvania Greyhound Lines, 177 Pa.Super. 275, 110 A.2d 892.

Hooker and the cases decided in reliance on that case do not apply here. New York, N. H. & H. R. Co. v. Nothnagle, 346 U.S. 128, 136, 73 S.Ct. 986, 990, 97 L.Ed. 1500, footnote 12 states: "Boston & Maine R. Co. v. Hooker, 1914, 233 U.S. 97, 34 S.Ct. 526, 58 L.Ed. 868, and New York Central & H. R. R. Co. v. Beaham, 1916, 242 U.S. 148, 37 S.Ct. 43, 61 L.Ed. 210, cannot control this case. *Neither decision involved the Act as amended by the 1915 and 1916 legislation; both dealt with free baggage checked through on a passenger ticket;* the carrier in both cases had supplied some notice of its limitation of liability." (emphasis supplied)

■ Of three exceptions noted two are present here. The first applies by virtue of the amendments since Hooker was decided. The second applies because plaintiff's baggage was excess weight baggage with a partial credit for free baggage.

There was no indication as to what was carried as free baggage and what was carried under the $8 charge. The luggage was not *free baggage* under Title 20(11) but excess weight baggage for which a charge was made.

This case should therefore be considered under the rule applied in Nothnagle: "But only by granting its customers a fair opportunity to choose between higher or lower liability by paying a correspondingly greater or lesser charge can a carrier lawfully limit recovery to an amount less than the actual loss sustained. Boston & Maine R. Co. v. Piper, 1918, 246 U.S. 439, 444–445, 38 S.Ct. 354, 355, 62 L.Ed. 820; Union Pacific R. Co. v. Burke, 1921, 255 U.S. 317, 321–323, 41 S.Ct. 283, 284–285, 65 L.Ed. 656; cf. The Steamship Ansaldo San Giorgio I v. Rheinstrom Bros. Co., 1935, 294 U.S. 494, 497–498, 55 S.Ct. 483, 484–485, 79 L.Ed. 1016. Binding respondent by a limitation which she had no reasonable opportunity to discover would effectively deprive her of the requisite choice; such an arrangement would amount to a forbidden attempt to exonerate a carrier from the consequences of its own negligent acts."

As generally in accord with our view of the effect to be given the Nothnagle rules see: Neece v. Richmond Greyhound Lines, supra; Mitchell v. Union Pacific R. Co. (9th Cir.) 242 F.2d 598 (opinion on remand D.C., 188 F.Supp. 869); Odom v. Pac. Northern Airlines, Inc., Alaska, 393 P.2d 112.

The following cases have construed the effect of Nothnagle more narrowly: Cray v. Pennsylvania Greyhound Lines, 177 Pa. Super. 275, 110 A.2d 892; Shirazi v. Greyhound Corporation, Montana, 401 P.2d 559; Zeidenberg v. Greyhound Lines, Inc., 3 Conn.Cir. 176, 209 A.2d 697; Greyhound Corporation v. Stevens, Tex.Civ.App., 413 S.W.2d 439; Mustard v. Eastern Air Lines, Inc., 338 Mass. 674, 156 N.E.2d 696.

Beaumont v. Pennsylvania R. Co., 127 N.Y. 216, modified and affirmed 284 App.Div. 354, 131 N.Y.S.2d 652, affirmed 308 N.Y. 920, 127 N.E.2d 80, certiorari denied 350 U.S. 838, 76 S.Ct. 75, 100 L.Ed. 747 was a case where excess weight was charged and paid. But there no excess valuation was declared and a valuation slip was signed on behalf of plaintiff with declared valuation of $400 for baggage later claimed to be worth $55,839. Valuation up to $10,000 could have been declared for extra charge. Because plaintiff voluntarily saw fit to choose the minimum valuation of $400, instead of the highest of $10,000, recovery over $400 was denied. This case is opposite. A jury could find the true value was declared but plaintiff was denied the opportunity to make the declaration effective or to learn that there was a $225 valuation limit on baggage accepted.

IV. The facts in this case underline the validity of the United States Supreme Court's insistence that liability limitation should apply only to free baggage checked through on a passenger ticket. The excess valuation declaration must be in writing (by statute) and on a form prepared by the carrier (by tariff). The form prescribed by defendant for excess weight declaration and charges also provides for excess valuation declaration and charges. The baggage agent had the form but elected to fill it out himself. We reproduce it here.

Form B22 (6-64)
Printed in U. S. A.
GREYHOUND LINES
EXCESS BAGGAGE DECLARATION **K 154601**
SUBJECT TO TARIFF REGULATIONS

| BAGGAGE CHECK NO. | VALUE | WEIGHT |
|---|---|---|
| K7) 595106 | $ | lbs. |
| thru 595113 | $ | lbs. |
|  | $ | lbs. |
|  | $ | lbs. |

| TOTAL. NUMBER OF TRANSPORTATION TICKETS: *1* | TOTAL | $ | lbs. |
|  | LESS: Free Allowance | $ | lbs. |
|  | EXCESS | ¢ | lbs. |

Maximum Excess Valuation: $200 on Full Fare Ticket and $100 on Half Fare Ticket

| EXCESS VALUE | $ 780 00 @ 10¢ per $100 value | $ |  |
| EXCESS WEIGHT | 120 lbs @ $ per 100 lbs. | 8 | 00 |
| STATE TAX | % of $ |  |  |
|  | TOTAL CHARGES | $ 8 | 00 |

Agent 19

Date 10 15 65

Station PRD

Passenger's Signature
X _____

This receipt is void unless properly signed by an agent of this company and must be presented with passenger's baggage checks when claiming baggage listed above.

R25558  NICHOLS BUSINESS FORMS CO., CINCINNATI, O  45205

While the agent was filling out the above form he was told the valuation of the baggage was in excess of $2000 and was specifically asked if it was fully insured. He left all valuation spaces blank.

Here a quotation from our own Bergstrom v. Chicago, R. I. & P. Railway Co., 134 Iowa 223, 111 N.W. 818 is in order: "The company as a common carrier was bound to receive the trunk for transportation, and whether it should be carried as freight, express, or as baggage was for it to decide. It was not unlawful for the company to carry it as baggage, and, as plaintiff desired it to be shipped as such, he must of necessity apply to some one representing the company to ascertain whether it would be so carried. To whom shall a passenger apply in such a case? There can be but one answer to this inquiry, and it is that he may rely upon the agent charged with the duty of receiving and checking baggage for transportation. The company by placing a baggageman in a room appropriate for receiving trunks and other receptacles for carriage on passenger trains, supplying him with checks to attach, indicating their destination, and allowing him the sole control of checking and determining what shall be loaded on the baggage cars, necessarily holds him out to the public as having authority to decide what will be so checked, loaded and carried as baggage."

The ticket issued to plaintiff limited liability to $25. The excess value and weight slip limited liability to $200; the tariff to $225. If plaintiff had read the various written notices on which should she rely? To whom should she turn for information? Defendant offered in evidence two notices, Exhibit A and B, which it claimed (but did not prove) were posted in the bus terminal. These notices were received in evidence over plaintiff's objection. Exhibit A had the following notice to the public. "The agent or other representative on duty will lend assistance, if requested, in securing information from

such tariffs." The tariff itself requires excess valuation information be supplied on the form prescribed by the carrier. The baggage agent elected to fill the form out himself. The jury could find plaintiff did all she reasonably could to comply with the requirement that excess value be declared in writing on a form supplied by the carrier and this requirement had been met under the circumstances here.

The tariff provides defendant will not knowingly accept prohibited articles. Prohibited articles include articles of extraordinary value. The tariff also provides: "Baggage for one passenger declared to exceed two hundred and twenty-five ($225) dollars in value for one or more pieces will not be accepted for checking or transportation;". Again the jury could find defendant had actual knowledge of the value of the baggage accepted and, through its agent, deliberately violated its own tariff. "The tariff is not a cloak to be worn or discarded as carrier may elect. Both carrier and passenger are bound by its terms." Neece v. Richmond Greyhound Lines, 246 N.C. 547, 99 S.E.2d 756, 762.

V. The rationale for the rigid rules restricting liability is divided into two general categories. Neither is applicable here.

First, the purpose of strict adherence to the limitation of liability is to insure uniform operation of the published tariff and to absolutely prohibit preferences directly or indirectly, by subterfuge or otherwise. This is the principal basis for the Hooker case and is based on analogous holdings growing out of freight cases. But Congress amended the interstate commerce act within a year after Hooker was decided. In the amending process it was made clear that passenger baggage was not to receive the same treatment as ordinary freight and thus baggage was treated separately. See discussion in footnotes 6 and 7 to Nothnagle case at 346 U.S. 131, 132, 73 S.Ct. 986, 97 L.Ed. 1500.

Second, since the contents and value of passenger baggage is unknown to the carrier, it may prescribe reasonable rates based on declared value and receive compensation commensurate with the risk taken by accepting the cargo for transportation. Lichten v. Eastern Air Lines, D. C., 87 F.Supp. 691, 695. The passenger gave the carrier actual knowledge of the claimed value of the shipment, offered to ship it by other means if it weren't insured and was told it was insured. Defendant had ample opportunity to exact its quid pro quo but failed to do so. It cannot now rely on lack of declared valuation as a limiting defense.

VI. Plaintiff also claims the baggage had been delivered to her and redelivered to defendant who then became a warehouseman. This theory is untenable. The tariff provides for free storage up to 72 hours as part of the baggage service. The consideration for such service flows from purchase of the ticket. There was no transfer of possession of the eight bags such as would constitute a delivery and redelivery here. Plaintiff alleges defendant was a bailee for hire. Her theory would make defendant a gratuitous bailee. If defendant is a bailee for hire it must necessarily be such as a common carrier under the facts in this case. No other consideration is shown.

VII. Plaintiff also contends defendant's tariff does not apply because one of the two lost bags measured 27 inches by 24 inches (the tariff limits size to 24 by 24). Neece v. Richmond Greyhound Lines, supra, gave similar small variation as reason for defendant taking control of the passenger's bags. The situation here is not the same. We are not prepared to hold a deviation in size of the luggage of this magnitude vitiates the tariff.

For the reasons noted in divisions II through V the case is reversed and remanded for trial.

All Justices concur, except LARSON, J., who concurs in the result.